## ROCK RIVER BANK vs. SHERWOOD.

### APPEAL FROM CIRCUIT COURT, ROCK COUNTY.

Heard October 19, 1859.]                              [Decided January 4, 1860.

### Banks—Interest—Usury—Corporation—Contracts— Pleadings.

Where S. had overdrawn his account with a bank, and then made a note to the bank putting into it the amount of interest then due at 10 per cent., and making the note draw interest at 12 per cent. when due: Held, that such contract was not void by reason of the banking law of Wisconsin, which authorized the bank to receive a rate of interest not exceeding 10 per cent.

The banking law of Wisconsin provides no penalty or forfeiture in case a bank takes more than 10 per cent. interest.

A corporation is not only incapable of making contracts which are forbidden by its charter, but in general, it can make none which are not necessary either directly or indirectly, to effect the objects of its creation.

When a corporation undertakes to make a contract entirely foreign to the purposes and objects of its creation, such contracts are void.

The case of Madison, &c., Plank Road Co. vs. Watertown, &c., Plank Road Co., 7 Wis., 59, considered and approved.

Rock River Bank vs. Sherwood.

There being no penalty provided in the general banking law for a violation of the same by a bank in taking more than 10 per cent. interest, the general law relating to usury applies to, and has the same effect upon a contract made in violation of the charter by the bank, as upon a contract made by an individual.

When a bank reserves a greater rate of interest than its charter allows, the general usury laws apply to the contract, although it does not exceed the rate prescribed by such usury law; and the general law is modified by a restriction in the bank charter, to the extent of the restriction.

Under the first section of the usury statute of 1856, the security was valid for the repayment of the principal sum loaned, but void for the interest reserved.

A pleading which avers that a bank had no authority to take a note which reserves a greater rate of interest than the bank is authorized to take, does not raise the question of usury, but of capacity in the bank to make the contract.

The interest on a usurious contract may be recovered, unless the defendant by his pleadings set up the usury as a defense, and apply to the court for the relief given by the usury act, and make and prove the tender of the principal as required by the statute.

This was an action brought by the Rock River Bank to recover the amount of a note made by M. W. Sherwood. The complaint alleged that on the 1st day of January, 1858, Sherwood, for value received, made, executed and delivered to Jackson J. Bushnell, the promissory note, and thereby promised to pay to the order of Bushnell, at the Rock River Bank, the sum of two hundred dollars in forty days from the date, with 12 per cent. interest, after due; and that the note was owned by the bank, &c.

The answer admitted the making and delivery of the note, and averred that the indebtedness was owing to the bank as a banking corporation, organized under the general banking laws of the state, for over drafts drawn by the defendant after the 16th day of May, and before the 4th of August, upon the upon the bank as a banking corporation. That at the date of the note Bushnell, as the agent of the bank, requested him to make this note in full for these over drafts, which amounted to $183 14, on which interest was computed at 10 per cent., amounting to $16 86. That at the time of making the over drafts and the taking the note, the bank was a banking corporation, &c., and that by the laws it had no authority or power to take the note, nor enter into the contract, and asked that the note be declared void, &c. To this answer the bank demurred generally.

The cause was tried at the circuit by the court, who found the issue of law for the bank, and that the bank was entitled

to the principal, and 10 per cent. from the time the note became due, amounting to $208 25. On which finding judgment was entered; and Sherwood appealed to this court.

The following are the exceptions to the finding of the referee and to the judgment thereon : 1. The note in question was given for a discount, or for money loaned by the plaintiff to defendant, the note being the security therefor, and drawing interest after due at 12 per cent., was void, the plaintiff being a banking corporation. 2. The finding and judgment is erroneous, it being for 10 per cent., the contract being for 12 per cent. The judgment should have been 7 or 12 per cent., if for anything. 3. The finding is contrary to law.

*Todd & Rockwell*, for the appellant.

The note was taken by the bank for money loaned, and the agreement was to pay more than 10 per cent. It was a reloaning of $183 14 for forty days with interest then due added, but was only a delivery of money by the bank to Sherwood.

It was an agreement to pay more than 10 per cent., and the contract was an entirety, and both parties would be bound by it, except for the inhibition in the bank's charter, would be binding on both parties; and the complaint claims judgment on the contract, and not on a different one. And this contract could be enforced as sood as it became due.

· But the general banking law, which is the charter of this bank, inhibited the taking of this note, § 4, R. S., 461: *Heal & Armory vs. The Providence Insurance Co.*, 2 Cranch, 127 ; *N. Y. Insurance Co. vs. Ely*, 5 Conn., 568 ; *Bank of Chilicothe vs. Swayne, et al.*, 8 Ohio, 257 ; *Bank of U. S. vs. Owens et al.*, 2 Pet., 527 ; *Tallman vs. Truesdell, et al.*, 3 Wis., 453 ; *People vs. Utica Ins. Co.*, 15 J. R., 358 ; *New Fire Ins. Co. vs. Sturges*, 2 Cow., 644 ; *Same vs. Ely*, id., 678 ; *Beach vs. Fulton Bank*, 3 Wend., 482 ; *Life & Fire Ins. Co., vs. Mich. Fire Ins. Co.*, 7 id., 31 ; *Creed vs. Commercial Bank*, 11 Ohio, 487; 12 id., 564 ; Angell & Ames on Corp., 233 ; 13 Conn. R., 249 ; 4 Peters, 168 ; 2 Doug., 230 ;. 1 Day, 401.

The agreement to pay 12 per cent., is not in the nature of a penalty, and cannot be so treated, but it is as it purports, a usurious agreement. The judgment is erroneous in being for 10 per cent. interest, and, for that reason alone, must be reversed.

*Mat H. Carpenter*, for the respondent.

Rock River Bank vs. Sherwood.

The recovery should have been for 12 per cent. instead of 10; but of this the appellant cannot complain.

This was not a case in which the bank was restricted to 10 per cent. It was neither "a loan on real or personal security," nor a "discount of notes, bills or other securities." The note was given on a settlement between the parties, and as a payment to the bank of a *bona fide* indebtedness.

This note drew no interest at all till after its maturity; and if it had been then paid, he would have paid only the 10 per cent. included in the note. The provision to pay 12 per cent. is in the nature of a penalty, and does not violate the banking law. *Roberts vs. Tremayne*, Cro. Jac., 509; *Hayer vs. Cooper*, 1 Cowp., 112; *Grover vs. Graves*, 1 Wash., 1; *Winslow vs. Dawson*, id., 118; *Cutler vs. How*, 8 Mass., 257; *Long vs. Storie*, 10 E. L. & Eq., 182; 2 Pars. on Cont., 393–4, and cases cited in notes to section 4, chap. 9, pt. 2; *Fisher vs. Otis*, 3 Chand., 83; *Lloyd vs. Scott*, 4 Pet., 225; *Shuck vs. Wright*, 1 Iowa, 128.

The note is not void, even if the court considers the banking law violated by receiving it. The general usury act, chap. 55, 1856, attaches to it. *Phil. Loan Co. vs. Tousier*, 13 Conn., 249; *Planter's Bank vs. Sharp*, 4 S. & M., 75; *Grand Gulf Bank vs. Archer*, 8 id., 151.

*By the Court*, COLE, J.    We should probably be refining too much upon the real nature of the transaction mentioned in the pleadings in this case, were we to hold that the note in question, was not in fact given by the appellant for a loan of money by the bank to him. It appears from the facts in the case, that Sherwood had been doing business with the bank, and had overdrawn his account, and that upon a settlement between him and the bank, he gave his note for such indebtedness, which note was made payable forty-five days from date with interest at the rate of 12 per cent. per annum after due. The bank upon this settlement charged the usual rate of interest on the amount advanced upon the checks of the appellant, and undoubtedly regarded it as an ordinary loan to one of its customers, who had overdrawn his account. At

all events, we are disposed so to consider it; and in that light, shall examine the legal consequences flowing from the transaction.

And the first question presented is, as to the power of the bank to make this contract. It is insisted by the counsel for the appellant, that as this contract was made by a bank which, by the laws of this state, was only authorized to demand and receive a rate of interest not exceeding 10 per cent. upon any loan made by it, that therefore the contract was void for want of capacity in the bank to make it. This objection renders it necessary to refer to the power granted to banks organized under chapter 71, R. S., 1859, the general banking law of the state. The first three sections of that act refer more particularly to the steps to be taken and the manner of organizing a bank. Section 4 of the chapter provides that "such association shall have power to carry on the business of banking by discounting bills, notes, and other evidences of debt; by receiving deposits; by buying and and selling gold and silver bullion, foreign coin, and foreign and inland bills of exchange; by loaning money on real and personal securities; and by exercising such incidental powers as may be necessary to carry on such business." Section 8 declares that it shall be lawful for such association to purchase, hold and convey real estate, for certain purposes therein specified, and contains an absolute prohibition upon the association from purchasing, holding or conveying real estate in any other case, or for any other purpose whatever. By section 15 it is provided, that "such banks or banking associations may demand and receive for loans on real and personal securities, or for notes, bills, or other evidences of debt discounted, a rate of interest not exceeding 10 per cent. per annum until the 1st day of January, one thousand eight hundred and sixty;" but no penalty or forfeiture is provided or declared in the law in case a bank takes more than 10 per cent. interest.

It is believed that the above are all the provisions of the banking law having a direct bearing upon the point under examination. In order to have the whole question before us, it may be as well to refer in this place to the general statute upon the subject of usury. Sections 1 and 2 of chapter 55, Sess. Laws, 1856, read as follows:

Section 1. All bonds, bills, notes, assurances, conveyances and all other contracts or securities, whatever, whereby there is reserved or secured a rate of interest exceeding 12 per cent., shall be valid and effectual to secure the repayment of the principal sum loaned, but no interest shall be recovered on such securities, or on any money or other thing loaned by such contract.

Section 2. Whenever any person shall apply to any court of this state to be relieved in case of a usurious contract or security, or when any person shall set up the plea of usury in any action or suit instituted against him, such person to be entitled to such relief or the benefit of such plea, shall prove a tender of the principal sum of money or thing loaned to the party entitled to receive the same."

It is at once apparent that the bank reserved upon this note a greater rate of interest than it was authorized to receive for any loan, by the banking law, though it did not exceed the rate which a person is permitted to reserve by special contract, under the general usury law. And the question arises, is the note void for the reason assigned, that the bank had no power to make such a contract?

Angell and Ames, in their work upon corporations, 270, § 256, in discussing the question as to what contracts in general, incorporated companies may make, say: "And here we would observe, that a corporation and individual stand upon very different footing. The latter existing for the general good of society, may do all acts, and make all contracts which are not, in the eye of the law, inconsistent with

this great purpose of his creation; whereas, the former having been created for a specific purpose, not only can make no contract forbidden by its charter, which is, as it were, the law of its nature, but in general can make no contract which is not necessary, either directly or indirectly, to enable it to answer that purpose." *The Penn. Del. and Md. Steam Navigation Company vs. Dandridge*, 8 Gill and J., 248.

And it is a familiar principle which runs through all the law upon this subject, that a corporation is not only incapable of making contracts which are forbidden by its charter, but in general it can make none which are not necessary either directly or indirectly to effect the objects of its creation. So, when a corporation undertakes to make a contract entirely foreign to the purpose and objects of its creation, such contracts are void. Illustrations of this rule are abundant. In the recent case of the *Madison, &c., Plank Road Co. vs. Watertown, &c., Plank Road Co.*, 7 Wis., 59, where the former company, which was authorized by its charter to construct a road from Milwaukee to Madison; and after having constructed the same to Watertown, determined to leave the field west of that place, temporarily to the other company, which had a charter for building a road westwardly along the route, nearly identically with that through which the complainants were authorized to extend their road; and the complainants signed a guaranty for the purpose of enabling the defendants to borrow money with which to construct a road westwardly, &c.; this court held the contract of guaranty void, as being entirely foreign to the object of the corporation, and without the general scope of its authority.

So an insurance company, which by its act of incorporation, was authorized to insure buildings and personal property against fire, and to make all kinds of marine insurance, and

to loan money on bottomry, *respondentia*, or mortgage of real estate, or chattels real, with a restriction that it should not exercise banking powers, loaned money on a promissory note, and indorsed the same; it was held that the act was unauthorized, and impliedly forbidden by its charter. *The New York Firemen's Insurance Company vs. Ely*, 2 Cow., 678; and cases cited in the notes to Angell & Ames on Corp., on pages 272 to 276 inclusive.

These examples are quite sufficient to illustrate the rule, and show the application of the doctrine in a case where a corporation attempts to make a contract entirely foreign to the purpose and object of its creation, and beyond the scope of the authority granted in its charter. Does the present case fall within that class of decisions? Here the bank, it is conceded, had full and ample power to discount promissory notes, loan money, &c., and conduct a general banking business, but it could only reserve ten per cent. interest upon its loans. It is not a case where a corporation usurps a power not given by its charter, but where, in the exercise of a lawful power and in conducting its legitimate business, it has exceeded the limits fixed by law. Had the note been given, drawing ten per cent. interest, after it became due, there could have been no question as to the validity of the contract. But the objection is, that the bank had no authority to discount a note at a greater rate of interest than the general banking law allowed; and if it does, the note is void for want of such power. Is this objection sound? I think not. And yet it must be admitted that there are a number of cases which appear to sustain this position. *The Bank of the United States vs. Owens*, 2 Peters, 527; *Bank of Chilicothe vs. Swayne*, 8 Ohio, 252; *Creed vs. The Commercial Bank of Cincinnati*, 11 id., 489; *Spaulding vs. The Bank of Muskingum*, 12 id., 544; *Orr vs. Lacey*, 2 Doug., 230, are cases where this question as to the effect of a bank discounting a note at a greater rate of

interest than is allowed by its charter is discussed; and some of them hold distinctly that the contract is void, for want of capacity in the bank to make it.

I am not prepared to follow these decisions. In my judgment the reasoning of these cases is clearly, successfully, and completely answered by the opinions given in the *Commercial Bank of Manchester vs. Nolan et al.,* 7 How. Miss., 508 ; and *McLean, Assignee, &c., of Manard vs. The Lafayette Bank et al.,* 3 McLean, 587. Mr. Justice Clayton gave an exceedingly able and elaborate opinion in the first case, in which the case in 2 Pet. is carefully examined and reviewed; while the doctrine of the Ohio cases is vigorously assailed, and to my mind completely overthrown. In the case in the 3d McLean, Mr. Justice McLean in considering the effect upon the contract of a bank taking usury, and meeting the objection that such a contract was void for want of power of the bank to make it, uses the following language, p. 611: "Now here is a capacity imparted to do every thing which a natural person could do in relation to the business specified. The natural persons who compose the corporation, are authorized to do, in their aggregate capacity, what each one might do in his natural capacity. Now what is the difference between the natural and artificial capacities here spoken of? It is admitted that an artificial person has no power to violate the law of its creation, or any other law. Has a natural person power to violate the law? We suppose not, and in this respect no difference is perceived between the two capacities. It is not a question of capacity, but of prohibition. A natural person is prohibited from taking more than *six per centum per annum* interest. If it were not for the prohibition he might agree for any reasonable rate of interest. And if the bank had not been prohibited in like manner, might it not have charged in the same way? Is there any doubt of this? It has power to loan money on interest, and no rate of inter-

est being established by law, may it not contract for the rate of interest as a natural person ? If it may not do this, it may do nothing, the prohibition in the charter acts upon the artificial capacity, as the general law of the same import acts upon the natural capacity of every citizen."

Again he says, while endeavoring to show that a bank and an individual occupy the same ground as to taking usury: " Neither can have any implied power to make a contract in violation of law; and the argument that a bank can do nothing for the doing of which power is not given, while an individual may do any thing which is not prohibited, is without force, because it can have no application to the case. The act is prohibited alike to the bank and the individual. On what principle, then, can the distinction be sustained ? As has been shown, the bank has the same power, under its charter, to make a contract for the loan of money as an individual, and if more than six per centum per annum had not been prohibited, it might have charged more."

It seems to me that this reasoning fully meets the objection that this note is void because the bank reserved a greater rate of interest than it was authorized to take. But what are the consequences of this act? We leave out of view, now, the question as to whether a bank would forfeit its franchises by reserving more interest than it is permitted to take by the general banking law; or whether such an act would be a good ground of forfeiture of its banking privileges, in a direct proceeding, instituted by the state, for a misuser of its franchises. This case does not call for the expression of any opinion upon that point, and of course none will be given. The banking law does not declare what shall be the consequence of taking more interest by a bank than is allowed by the banking law. It is an undoubted violation of that law, which is the charter for every bank, to reserve upon any loan more than ten per cent. interest. But as there is no penalty

affixed in the banking law for a violation in this respect, we must ·look to the general, common, or statutory law to ascertain the consequences of its violation.   And in the first place, we suppose that the act of the bank, in taking excessive interest, must be viewed precisely as an act of an individual· *Planters' Bank vs. Sharp et al.,* 4 S. & M., 75; *The Grand Gulf Bank vs. Richard T. Archer et al.,* 8 id., 151; *Veazie Bank vs. Paulk,* 40 Me., 109; *The Philadelphia Loan Company vs. Towner,* 13 Conn., 249.

The statute of 1856 is very general in terms, and I cannot perceive why it does not apply to corporations as well as natural persons.   It was argued by counsel for the bank, that this note was not affected by the statute of 1856; for, although the rate of interest reserved was greater than the bank, by the banking law, was permitted to take, still that it did not exceed the rate which parties might contract for under this general statute.   But we are of the opinion, that when a bank reserves a greater rate of interest than is allowed by its charter, that the usury law applies to it, although it does not exceed the rate prescribed by such usury law.   The general usury law is to that extent modified by section fifteen of the bank law, and that section takes the place, as far as it is applicable, of the statute upon usury.   Now, it will be seen that the only penalty prescribed by the statute of 1856, for taking usury, is the loss of all interest.   The first section provides that the contract or security shall be valid and effectual to secure the repayment of the sum loaned, but no interest shall be recovered upon such security.   I have had some difficulty in putting a satisfactory construction upon this statute.   Were the first section standing alone, I should then think that the judgment of the circuit court must be reversed, upon the ground that interest was given upon the note after it became due, at the rate of ten per cent. per annum.   But under the pleadings in this case, I am inclined to the opinion, that this was proper.

Rock River Bank vs. Sherwood.

The appellant does not set up usury in his answer, but alleges that the bank had no authority or power to take the note, or to enter into any contract for more than ten per cent. interest, and asked that the note be declared void. This was raising the question of the power of the bank to make the contract, insisting that it had no such power, and that the contract was void upon that ground. It is not claimed that the contract was usurous, but void, for want of capacity of the bank to make it. Now, it appears to me, that the first section of this statute is qualified and restricted by the provisions of the second section, and that they must both be construed together; and I therefore think, that the interest upon a usurous contract may be recovered, unless the party affected by the usury applies to the court to be relieved therefrom, or sets up the usury in his answer; in which case, to be entitled to any relief, or the benefit of his defence, he must prove a tender of the principal sum loaned. Suppose a party sets up usury in his answer, but fails to prove any tender of the principal sum, will the court give him the benefit of his defense? Obviously not, because the statute says that he must prove a tender of the principal sum, as a condition of having the benefit of that defense.

And in case the defendant fails to prove a tender, what would the plaintiff be entitled to recover? I think the principal and interest. If the first section of the statute is alone considered, disconnected from the provisions of the second section, it would seem to require that the court should, upon its own motion, refuse to give judgment for any interest upon a usurous contract, whenever it was made to appear that such usury had been taken. I cannot think that the legislature intended any such result as that a party setting up the usury in his answer, but failing to prove a tender of the principal sum, should be in a worse condition than one who did not set it up at all. Yet such would be the consequence, unless

it is held that a plaintiff may recover principal and interest, when the usury is not set up in the answer, and a tender of the principal sum proven on the trial.

The conclusion at which I have arrived is, that the judgment of the circuit court is right, and must be affirmed.