## NATIONAL BANK *v.* MATTHEWS.

A. executed a promissory note to B., and, to secure the payment thereof, a deed of trust of lands, which was in effect a mortgage with a power of sale thereto annexed. A national bank, on the security of the note and deed, loaned money to B., who thereupon assigned them to the bank. The note not having been paid at its maturity, the trustee was, pursuant to the power, proceeding to sell the lands, when A. filed his bill to enjoin the sale, upon the ground that, by sects. 5136 and 5137 of the Revised Statutes, the deed did not inure as a security for a loan made by the bank at the time of the assignment of the note and deed. *Held,* that the bank is entitled to enforce the collection of the note by a sale of the lands.

ERROR to the Supreme Court of the State of Missouri.

On the 1st of March, 1871, Hugh B. Logan and Elizabeth A. Matthews executed and delivered to Sterling Price & Co. their joint and several promissory note for the sum of $15,000, payable to the order of that firm two years from date, with interest at the rate of ten per cent per annum. The payment of the note was secured by a deed of trust, executed by her, of certain real estate therein described, situate in the State of Missouri.

On the 13th of the same month, the note and deed of trust were assigned to the Union National Bank of St. Louis. Price & Co. failed to pay the loan at maturity. The bank directed the trustee named in the deed of trust to sell. Said Elizabeth thereupon filed this bill in the proper State court to enjoin the sale. The bank in its answer avers that it "accepted the said note and deed of trust as security for the sum of $15,000, then and there advanced and loaned to said Sterling Price & Co. . . . on the security of said note and deed of trust." A perpetual injunction was decreed, upon the ground that the loan by the bank to Price & Co. was made upon real-estate security; that it was forbidden by law; and that the deed of trust was, therefore, void. The decree was made upon the pleadings. No testimony was introduced upon either side. The bank removed the case to the Supreme Court of the State, where the decree was affirmed. The bank then sued out this writ of error.

*Mr. Philip Phillips* for the plaintiff in error.

This case does not fall within the limitations imposed by Rev. Stat., sect. 5137. No mortgage or conveyance of real estate was made *to* the bank. Price & Co. had only a lien which could be enforced in default of payment. This was all that they passed to the bank: *Potter* v. *McDowell* (43 Mo. 93); *Watson* v. *Hawkins* (60 id. 550); and it was a mere incident to the note, securing its payment to the holder thereof in good faith, although he was ignorant, at the time of taking it, of the existence of the lien. Had the mortgage not been delivered nor any thing said about it, the bank, on failure of the maker to pay the note, would have been entitled to the lien: *Green* v. *Hart* (1 Johns. (N. Y.) 590); *Chappell* v. *Allen* (38 Mo. 213); and its right to assert it could not have been successfully resisted on the ground that to permit it to do so would authorize a violation of its charter.

The act, by authorizing loans to be made " on personal security," cannot be held as limiting the transaction to the personal undertaking of the parties to the note; and it would not be violated if the bank should require as collateral a deposit of bonds or of stocks, either of States, municipalities, or incorporated companies. *Shoemaker* v. *National Bank*, 2 Abb. (U. S.) 416; Schouler, Personal Property, pp. 87, 94; *Pittsburg Car Works* v. *Bank*, Thompson's Nat. Bank Cases, 315. In many of these instances the bonds or stocks are secured by real estate. This, however, does not change the character of the collateral, or make it other than personal security. See also *First National Bank of Fort Dodge* v. *Haire*, 36 Iowa, 443; *Merchants' National Bank* v. *Mears*, Thompson's Nat. Bank Cases, 353.

The decision of the learned court below questions neither the right of the bank to recover the contents of the note by suing the parties thereto, nor the validity of the lien created by the mortgage. Here there are a *bona fide* subsisting debt, evidenced by the note, whereof the bank is the lawful holder, and a lien which Price & Co., before their attempted transfer of it, could have made available. It does now inure to their benefit, because they have assigned the note, and it cannot be enforced by the bank, as it was made void in its hands. Is the

lien then vacated? It certainly is, for all practical purposes, if the extraordinary position taken below should be sustained here.

Can the defendant in error, by a strained construction, be permitted to make the objection and cancel a contract which the statute does not declare to be void? There is some contrariety of opinion upon this question, and the court is referred to some of the numerous cases which answer it in the negative. *Smith* v. *Sheely*, 12 Wall. 360; *Gold Mining Company* v. *National Bank*, 96 U. S. 640; *Silver Lake Bank* v. *North*, 4 Johns. (N. Y.) Ch. 370. The decision in the last case is, that if the bank had passed " the exact line of its power, it would rather belong to the government to exact a forfeiture of the charter, than to the court in this collateral way to decide a question of misuser by setting aside a just and *bona fide* contract." The same doctrine is repeated in *Steam Navigation Company* v. *Wood*, (17 Barb. (N. Y.) 380), and supported by the judgments of the courts of Massachusetts, Pennsylvania, and other States. Ang. & A. Corp., sect. 153.

*Mr. J. A. Hunter*, *Mr. John W. Noble*, and *Mr. John C. Orrick*, for the defendant in error.

The deed of trust is in effect a mortgage with a power of sale thereto annexed. Although a third person is named as trustee, and vested with that power, the grantor has an equity of redemption, which may be judicially foreclosed and sold. The *cestui que trust* has a beneficial interest in the lands. *Kennett* v. *Plummer*, 28 Mo. 142; *Chappell* v. *Allen*, 38 id. 213; *Potter* v. *Stevens*, 40 id. 229. In the absence of any statutory prohibition, the assignments would have vested that interest in the bank, but as the latter is permitted (Rev. Stat., sect. 5137) to " purchase " or " hold " real estate in certain specified cases, — of which this is not one, — and in " no other," the assignments passed no interest in the lands, and conferred no right to subject them to sale to pay the note.

The words " purchase " and " hold," where they occur in that section, are not confined to cases where the absolute title to the fee has been conveyed. The provision allowing the bank to take a mortgage, by way of security for debts *previously contracted*,

would be superfluous, if the general prohibitory words did not forbid it to purchase such an interest in real property as a mortgage transfers. Looking at the mischief which the statute had in view, it is immaterial whether the mortgage is made directly *to* the bank, or is assigned to it. The interest acquired is in each case the same.

The preceding section allows the bank to loan money on personal security. This virtually prohibits loaning it on any other. *Expressio unius est exclusio alterius.*

The decided cases, without a dissent, affirm that all grants of corporate power are to be construed favorably to the public at large and most strongly against the corporation; that it has only the powers expressly given or necessarily implied ; that the specification of certain powers prohibits by implication the exercise of other substantive powers, and that the intention of the law-maker is to be gathered from the whole statute. Governed by these fundamental rules, it must be held that the transaction on the part of the bank was *ultra vires*, not allowed by, but in palpable violation of, the statute to which it owes its existence, and consequently void. The injunction was therefore properly awarded. *Fowler* v. *Scully*, 72 Pa. St. 456; *Kansas Valley National Bank* v. *Rowell*, 2 Dill. 371 ; *Ripley* v. *Harris*, 3 Biss. 190 ; *Commonwealth Bank* v. *Clark*, 4 Mo. 59 ; *Griffith* v. *Commonwealth Bank*, id. 255 ; *Bank of Lawrence* v. *Young*, 37 id. 398 ; *Downing* v. *Ringer*, 7 id. 585 ; *White* v. *Franklin Bank*, 22 Pick. (Mass.) 181 ; *Brown* v. *Farkington*, 3 Wall. 381 ; *Beasley* v. *Bignold*, 5 Barn. & Ald. 335 ; *Forster* v. *Taylor*, id. 887 ; *Cope* v. *Rowlands*, 2 Mee. & W. 149.

MR. JUSTICE SWAYNE, after stating the facts, delivered the opinion of the court.

This case involves a question arising under the national banking law, which has not heretofore been passed upon by this court. We have considered it with the care due to its importance.

Our attention has been called to but a single point which requires consideration, and that is, whether the deed of trust can be enforced for the benefit of the bank.

The statutory provisions which bear upon the subject are as follows: —

"SECT. 5136." Every national banking association is authorized "to exercise by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of this title.

"SECT. 5137. A national banking association may purchase, hold, and convey real estate for the following purposes, and for no others: *First*, such as may be necessary for its immediate accommodation in the transaction of its business. *Second*, such as shall be mortgaged to it in good faith by way of security for debts previously contracted. *Third*, such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings. *Fourth*, such as it shall purchase at sales under judgments, decrees, or mortgages held by the association, or shall purchase to secure debts to it. But no such association shall hold the possession of any real estate under mortgage, or the title and possession of any real estate purchased to secure any debts due to it for a longer period than five years." Rev. Stat. 1999; 13 Stat. 99.

Here the bank never had any title, legal or equitable, to the real estate in question. It may acquire a title by purchasing at a sale under the deed of trust; but that has not yet occurred, and never may.

Sect. 5137 has, therefore, no direct application to the case. It is only material as throwing light upon the point to be considered in the preceding section. Except for that purpose it may be laid out of view.

Sect. 5136 does not, in terms, prohibit a loan on real estate, but the implication to that effect is clear. What is so implied is as effectual as if it were expressed. As the transaction is disclosed in the record, the loan was made upon the note as well as the deed of trust. *Non constat*, that the maker who executed the deed would not have been deemed abundantly sufficient without the further security. The deed, as a mortgage would have been, was an incident to the note and a right

to the benefit of the deed, whether mentioned or delivered or not, when the note was assigned, would have passed with the note to the transferee of the latter.

The object of the restrictions was obviously threefold. It was to keep the capital of the banks flowing in the daily channels of commerce; to deter them from embarking in hazardous real-estate speculations; and to prevent the accumulation of large masses of such property in their hands, to be held, as it were, in mortmain. The intent, not the letter, of the statute constitutes the law. A court of equity is always reluctant in the last degree to make a decree which will effect a forfeiture. The bank parted with its money in good faith. Its garments are unspotted. Under these circumstances, the defence of *ultra vires*, if it can be made, does not address itself favorably to the mind of the Chancellor. We find nothing in the record touching the deed of trust which, in our judgment, brings it within the letter or the meaning of the prohibitions relied upon by the counsel for the defendant in error.

In *The First National Bank of Fort Dodge* v. *Haire and Others* (36 Iowa, 443), the bank refused to discount a note for a firm, but agreed that one of the partners might execute a note to the other, that the payee should indorse it, that the bank should discount it, and that the maker should indemnify the indorser by a bond and mortgage upon sufficient real estate executed for that purpose, with a stipulation that, in default of due payment of the note, the bond and mortgage should inure to the benefit of the bank. The arrangement was carried out. The note was not paid. The maker and indorser failed and became bankrupts. The bank filed a bill to foreclose. The same defence was set up as here. In disposing of this point, the Supreme Court of the State said: " Every loan or discount by a bank is made in good faith, in reliance, by way of security, upon the real or personal property of the obligors; and unless the title by mortgage or conveyance is taken to the bank directly, for its use, the case is not within the prohibition of the statute. The fact that the title or security may inure indirectly to the security and benefit of the bank will not vitiate the transaction. Some of the cases upon quite analogous statutes go much further than this. *Silver Lake Bank* v. *North*, 4 J. C. R. 370."

But it is alleged by the learned counsel for the defendant in error that in the jurisprudence of Missouri a deed of trust is the same thing in effect as a direct mortgage, — with respect to a party entitled to the benefit of the security, — and authorities are cited in support of the proposition. The opinion of the Supreme Court of Missouri assumes that the loan was made upon real-estate security within the meaning of the statute, and their judgment is founded upon that view. These things render it proper to consider the case in that aspect. But, conceding them to be as claimed, the consequence insisted upon by no means necessarily follows. The statute does not declare such a security void. It is silent upon the subject. If Congress so meant, it would have been easy to say so; and it is hardly to be believed that this would not have been done, instead of leaving the question to be settled by the uncertain result of litigation and judicial decision. Where usurious interest is contracted for, a forfeiture is prescribed and explicitly defined.

In *Harris* v. *Runnels* (12 How. 79), this court said that "the statute must be examined as a whole, to find out whether or not the makers meant that a contract in contravention of it was to be void, so as not to be enforced in a court of justice." In that case, a note given for the purchase-money of slaves, taken into Mississippi contrary to a statute of the State, was held to be valid.

Where a statute imposes a penalty on an officer for solemnizing a marriage under certain circumstances, but does not declare the marriage void, the marriage is valid; but the penalty attaches to the officer who did the prohibited act. *Milford* v. *Worcester*, 7 Mass. 48; *Parton* v. *Hervey*, 1 Gray (Mass.), 119; *King* v. *Birmingham*, 8 Barn. & Cress. 29.

Where a bank is limited by its charter to a specified rate of interest, but no penal consequence is denounced for taking more, it has been held that a contract for more is not wholly void. *The Planters' Bank* v. *Sharp et al.*, 12 Miss. 75; *The Grand Gulf Bank* v. *Archer et al.*, 16 id. 151; *Rock River Bank* v. *Sherwood*, 10 Wis. 230.

The charter of a savings institution required that its funds should be "invested in, or loaned on, public stocks or private

mortgages," &c.   A loan was made and a note taken, secured by a pledge of worthless bank-stock.   The borrower sought to enjoin the collection of the note upon the ground that the transaction was forbidden by the charter, and therefore void. The court held the borrower bound, and upon a counter-claim adjudged that he should pay the amount of the loan with interest. *Mott* v. *The United States Trust Co.*, 19 Barb. (N. Y.) 568.

Where a corporation is incompetent by its charter to take a title to real estate, a conveyance to it is not void, but only voidable, and the sovereign alone can object.   It is valid until assailed in a direct proceeding instituted for that purpose. *Leazure* v. *Hillegas*, 7 Serg. & R. (Pa.) 313 ; *Goundie* v. *Northampton Water Co.*, 7 Pa. St. 233 ; *Runyon* v. *Coster*, 14 Pet. 122 ; *The Banks* v. *Poitiaux*, 3 Rand. (Va.) 136 ; *McIndoe* v. *The City of St. Louis*, 10 Mo. 577.   See also *Gold Mining Company* v. *National Bank*, 96 U. S. 640.

The authority first cited is elaborate and exhaustive upon the subject.   So an alien, forbidden by the local law to acquire real estate, may take and hold title until office found.   *Fairfax's Devisee* v. *Hunter's Lessee*, 7 Cranch, 604.

In *Silver Lake Bank* v. *North* (4 Johns. (N. Y.) Ch. 370), the bank was a Pennsylvania corporation, and had taken a mortgage upon real estate in New York.   A bill of foreclosure was filed in the latter State.   The answer set up as a defence " that by the act of incorporation the plaintiffs were not authorized to take a mortgage except to secure a debt previously contracted in the course of its dealings ; and here the money was lent after the bond and mortgage were executed."   The analogy of this defence to the one we are considering is too obvious to need remark.   Both present exactly the same question. Chancellor Kent said : " Perhaps it would be sufficient for this case that the plaintiffs are a duly incorporated body, with authority to contract and take mortgages and judgments ; and if they should pass the exact line of their power, it would rather belong to the government of Pennsylvania to exact a forfeiture of their charter, than for this court in this collateral way to decide a question of misuser, by setting aside a just and *bona fide* contract." . . . " If the loan and mortgage were concurrent acts, and intended so to be, it was not a case within

the reason and spirit of the restraining clause of the statute, which only meant to prohibit the banking company from vesting their capital in real property, and engaging in land speculations. A mortgage taken to secure a loan advanced *bona fide* as a loan, in the course and according to the usage of banking operations, is not surely within the prohibition."

It is not denied that the loan here in question was within this category. This authority, if recognized as sound, is conclusive. See also *Baird* v. *The Bank of Washington*, 11 Serg. & R. (Pa.) 411.

Sedgwick (Stat. and Const. Constr. 73) says: "Where it is a simple question of authority to contract, arising either on a question of regularity of organization or of power conferred by the charter, a party who has had the benefit of the agreement cannot be permitted in an action founded upon it to question its validity. It would be in the highest degree inequitable and unjust to permit a defendant to repudiate a contract, the benefit of which he retains."

What is said in the text is fully sustained by the authorities cited.

We cannot believe it was meant that stockholders, and perhaps depositors and other creditors, should be punished and the borrower rewarded, by giving success to this defence whenever the offensive fact shall occur. The impending danger of a judgment of ouster and dissolution was, we think, the check, and none other contemplated by Congress.

That has been always the punishment prescribed for the wanton violation of a charter, and it may be made to follow whenever the proper public authority shall see fit to invoke its application. A private person cannot, directly or indirectly, usurp this function of the government.

The decree of the Supreme Court of Missouri will be reversed, and the cause remanded with directions to dismiss the bill; and it is

                                        *So ordered.*


MR. JUSTICE MILLER dissenting.

I am of opinion that the National Banking Act makes void every mortgage or other conveyance of land as a security for

money loaned by the bank at the time of the transaction to whomsoever the conveyance may be made ; that the bank is forbidden to accept such security, and it is void in its hands.

The contract to pay the money, and the collateral conveyance for security, are separable contracts, and so far independent that one may stand and the other fall.

In the present case, the money was loaned on the faith of the deed of trust, and that instrument is void in the hands of the bank, but the note, as evidence of the loan of money, is valid against Mrs. Matthews personally. With this latter contract the State court did not interfere. It enjoined proceedings under the deed of trust against the land, and did no more.

Its judgment in that matter ought, in my opinion, to be affirmed.