This language is quite applicable here; and we have no hesitation in stating the rule to be that, wherever an instrument exists which the holder may so utilize as to convert it into a cloud on title by action of his own, and he refuses to surrender it, and thus put an end to this power, there is a threat to create a cloud which equity will interfere to prevent.

The result of our examination of the authorities is: (1) That, wherever a cloud exists, equity will remove it. (2) That any instrument or instruments sufficient of themselves to create a prima facie estate or interest in land, whether absolute or conditional, which the true owner would be compelled to resort to extrinsic proof in order to destroy, constitute a cloud, although the claimant might himself, in order to take practical advantage of his interest, be forced to resort to extrinsic proof. (3) That the character of the extrinsic proof to which the owner must resort is immaterial. The mortgage in question answers the definition, at least if recorded, and hence should be canceled. We have considered the case at perhaps unnecessary length, because the question presented is important, and, though we regard it as settled upon authority, the reasons in support of the rule seem not to have been definitely set forth, and arguments against it are easily framed. It is necessary throughout to distinguish carefully between actions brought to cancel instruments affecting land, and all others, such as bonds and promissory notes. The difference between the two classes of cases was clearly pointed out as far back as Ward v. Dewey, supra, where Selden, J. (page 525), stated that, in the latter, there was doubt whether equity would assume jurisdiction, but that, where the instrument affected the title to land, it had never been considered a valid reason against such jurisdiction that a perfect defense existed at law. The doubt expressed as to cases of the other class has been resolved against the jurisdiction of equity (Town of Venice v. Woodruff, 62 N. Y. 462; Fowler v. Palmer, Id. 533; Insurance Co. v. Reals, 79 N. Y. 202), but the attitude of the court with regard to instruments affecting the title to land has never altered.

The order and judgment appealed from should be reversed, with costs of the trial and appeal, and the demurrer overruled, with leave to the defendant to answer over within 20 days upon payment of costs. All concur.

---

(16 App. Div. 434.)

## WASHINGTON LIFE INS. CO. v. CLASON et al.

(Supreme Court, Appellate Division, First Department. April 23, 1897.)

MORTGAGE TO INSURANCE COMPANY—VALIDITY—STATUTORY REQUIREMENTS.

    A mortgage to an insurance company to secure a loan is not void because the mortgaged premises were not of the value prescribed by Laws 1892, c. 690 (Insurance Law) § 16, which provides that the deposits with the superintendent of insurance may be in bonds and mortgages on real property "worth 50 per cent. more than the amount loaned."

Appeal from special term, New York county.

Action by the Washington Life Insurance Company against Augustus C. Clason and others to foreclose a mortgage. From a judgment of foreclosure and sale, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, PATTERSON, and PARKER, JJ.

L. L. Kellogg, for appellants.

David Thomson, for respondent.

PATTERSON, J. This action was brought for the foreclosure of a mortgage and the sale of the mortgaged premises. The mortgage was made by the defendant Augustus Clason, and was given as collateral security to a bond, the consideration of which was money loaned. The plaintiff is a corporation carrying on the business of life insurance. It made a loan, and took the security of the mortgage, apparently in the course of its business, and as an investment of so much of its corporate funds; the transaction being directly between the plaintiff and the defendant Clason. That defendant interposed an answer to the complaint, and set up as an affirmative defense that, at the time the consideration money of the bond and mortgage was advanced to him by the plaintiff, the premises covered by the mortgage were not unincumbered, and that there was then outstanding upon such premises a mortgage of $100,000, which was an amount equal, at the least, to 50 per cent. of the value of the mortgaged premises, and that, therefore, such premises were not worth 50 per cent. more than the sum loaned by the plaintiff, and secured by the mortgage sought to be foreclosed, and that the security given by the defendant and taken by the plaintiff was so given and taken in contravention of the statute of the state of New York relating to loans upon bond and mortgage made by insurance corporations; and that the transaction, as to the security, was and is against public policy, and void. On the trial at the special term the defendant offered to prove the facts which it was claimed would establish the defense of the illegality and invalidity of the security, and the offer was overruled. Judgment was afterwards ordered for the plaintiff, and from that judgment this appeal is taken.

The contention of the appellant is that the security is void, and that an action cannot be maintained upon it. It is not claimed that the whole of the transaction is vitiated, so that there could be no recovery on a naked demand for the money loaned; but the argument is that the provisions of the statute show it to be the policy of the state that securities of this character shall not be enforced, and that the effect of the statute is to render them unenforceable. The act of the legislature referred to (chapter 690, § 16, Laws 1892) provides that the cash capital of insurance companies shall be invested, and kept invested, in the kinds of securities in which deposits with the superintendent of insurance are required to be made; that the residue of the capital and the surplus moneys and funds of every domestic insurance company, over and above its capital stock and the amount deposited with the

·superintendent, may be invested on the pledge of any securities in which deposits are required to be invested. Section 13 of the same .act prescribes that the deposits made with the superintendent of in-.surance shall be in the stock and bonds of the United States or the state of New York, or in county bonds, or bonds of incorporated cities of this state, authorized to be issued by the legislature, "or .in bonds and mortgages on improved, unincumbered, real prop-.erty in this state, worth fifty per cent. more than the amount loaned thereon." It will be seen from these provisions of the statute that .the only vice in this mortgage, which it is claimed avoids it, is .referred to in the allegation of the complaint that the mortgaged premises were not unincumbered and worth 50 per cent. more than .the amount loaned. There is nothing in the statute which de-.clares that securities such as this mortgage shall be void, nor are bonds and mortgages on real estate prohibited securities. On the contrary, they are lawful securities. They are of the character .authorized by the statute. If the statute had declared them void, or if, in their nature, they were strictly prohibited securities, the discussion would be ended. In all the cases in which the securi-.ties have been declared to be unavailable and unenforceable in .the hands of the holder, the statute has either declared them void, ·or they have been altogether prohibited securities, or it has been .adjudged that investment in them would run counter to the policy ·of the law. As the legislature has not enacted that mortgages of .this character are void,—as there is no prohibition upon investing .the surplus moneys or funds of insurance companies in bonds and .mortgages,—the only subject that can require further considera-.tion is whether it can be inferred, reasonably, that it was the in-.tention of the legislature to destroy, in the hands of insurance companies, securities like that in suit, where there is merely an ·excess of the amount of the loan over the proportion, named in the act, of value of the mortgaged property. It would seem as if the statement of this proposition carried with it its own an-.swer. The purpose of the statute is to protect the creditors and the policy holders, and not to allow a debtor, after giving security, upon the faith of which, in reality, money is advanced him, to withdraw the security, and take away from the corporation that .alone upon the faith of which the transaction was in reality made. The question of the enforceability of securities in which a corpo-·ration is not authorized to invest its moneys has been passed upon by the supreme court of the United States in cases arising under the national banking law. In the case of Bank v. Matthews, 98 U. S. 621, a deed of trust on real property in Missouri was given ·by debtors to secure a promissory note, which note and deed of trust passed to the Union National Bank of St. Louis as security for a loan, which loan not being paid, an effort was made by the bank ·to sell the premises. Matthews thereupon applied for an injunc-·tion to restrain the sale of the premises, on the ground that the ·security was one the bank was forbidden to take by a statute of the United States. The injunction was sustained in the state ·court, but the decree of that court was reversed by the supreme

court of the United States, and it was held that the security was
enforceable; that—

"The statute does not declare such a security void. It is silent upon the
subject. If the congress so meant, it would have been easy to say so; and
it is hardly to be believed that this would not have been done, instead of
leaving the question to be settled by the uncertain result of litigation and
judicial decision."

What was decided in that case was reasserted in the case of Bank
v. Whitney, 103 U. S. 99. The court there remarked that the
question of the effect of taking such securities was not an open
one in that court since the decision in the Matthews Case, and
repeated that the prohibitory clause of the banking law did not
vitiate real-estate securities taken for loans, and "that a disregard
of that only laid the association open to proceedings by the gov-
ernment." It is further remarked "that whatever objection there
may be to it as security for such advances, from the prohibitory
provisions of the statute, the objections can only be urged by the
government." Fleckner v. Bank, 8 Wheat. 338–355. We think
these views are applicable to this case, the question being essen-
tially the same. The securities are not declared to be void; no
penalty is imposed by the statute upon taking them with a smaller
margin of value than that mentioned in the statute; and it can-
not be presumed that it was the intention of the legislature to
sanction a construction of that statute that would destroy, instead
of strengthen, the investments of insurance corporations. A check
upon the company remains, and it is a serious one. The penalties
that may be imposed by the government of the state upon a cor-
poration for carrying on its business in violation of law are of the
gravest nature. This case is plainly distinguishable from that of
Pratt v. Short, 79 N. Y. 437. There the securities condemned were
made void by the statute, and there was a total prohibition upon
the corporation investing in commercial paper; and that total pro-
hibition, coupled with the declaration that such an investment
should be void, clearly distinguished that case from this.

The judgment of the court below was right, and should be af-
firmed, with costs. All concur.