[No. 7757. Decided March 23, 1909.]

PUGET SOUND NATIONAL BANK OF SEATTLE, *Respondent*, v. H. M. FISHER, TRUSTEE, *et al.*, *Appellants*.[1]

COURTS—JURISDICTION—QUIETING TITLE—VENUE. In an action to quiet title to land alleged to be situated in a certain county where the suit was brought, and to set aside the tax deed of another county which assumed to assess the lands, the court in the first mentioned county has jurisdiction to bind all parties who appeared in the action.

BANKS—NATIONAL BANKS—ACQUIRING TITLE TO REAL ESTATE— WHO MAY QUESTION. The title to real estate taken by a national bank is not void, and is voidable only at the suit of the government.

STATUTES—CONSTRUCTION—AMBIGUITY—COUNTIES — BOUNDARIES— EXTRINSIC EVIDENCE—ADMISSIBILITY—SUFFICIENCY. Where the statutory description of county boundaries is ambiguous and doubtful, it is admissible to show the contemporaneous construction placed thereon by the assumption and continuous exercise of jurisdiction over the territory by the officers of one county, in relation to roads, road districts, election precincts, school districts, and the candidacy for county offices and the voting of inhabitants of the territory, and the return and assessment of its property for taxation; evidence of such long continued, undisputed control being sufficient to show that the territory was included in such county.

Appeal from a judgment of the superior court for Jefferson county, Albertson, J., entered May 15, 1908, upon findings in favor of the plaintiff, in an action to quiet title. Affirmed.

*E. M. Farmer* and *Daniel Cross*, for appellants.

*Harold Preston*, for respondent.

[1]Reported in 100 Pac. 724.

DUNBAR, J.—Protection Island, upon which the land which is the subject of this controversy is situated, is an island in the Straits of Juan de Fuca, lying about two miles off the shores of Clallam county in front of, and a little to the west of, the entrance to Port Discovery Bay. At the time of the organization of Washington territory, Clallam county was a part of Jefferson county. The first territorial legislature undertook to create Clallam county out of Jefferson county, and division lines were sought to be established. Subsequent legislatures, commencing with the legislature of 1857-8, undertook by different acts to establish the boundary line between Clallam and Jefferson counties. The description of the northwest boundary line of Jefferson county was incorporated into the general description of the boundary of the two counties by the legislature of 1867 (Laws 1867, p. 45), and the legislature of 1869 again passed an act defining the county lines of several counties in the territory. The boundaries of Jefferson and Clallam counties were defined therein in the language of the act of 1867. The same language has been carried down through the different subsequent codifications of the statutes, and now reads as in the act of 1867.

The respondent's title is deraigned from the original purchasers of the land, and the appellants claim title through a tax deed issued out of the superior court of Clallam county. For many years taxes were levied and collected on this land only by Jefferson county, but in 1891 Clallam county assessed part of Protection Island. In 1892 the island was assessed only in Jefferson county. From 1893 up to the present time the officials of Clallam county have assessed the island as a part of Clallam county. The taxes were paid by the owner of the land to Jefferson county only; a tax certificate of delinquency for the years 1893-4-5 against said tracts of land was foreclosed; judgment and order of sale were subsequently entered, and in accordance with such transactions the land was sold to Clallam county, and a deed

issued therefor. Subsequently Clallam county sold said land; H. M. Fisher, the trustee of the appellants in this case, becoming purchaser therefor, it being expressly provided in the deed that there was intended to be conveyed thereby only such right, title, and interest in and to said lands as such Clallam county might have.

This action was brought to remove the cloud from respondent's title. Appellants, defendants in the court below, objected to the admission of the testimony, and demurred to the complaint on the ground that it did not state a cause of action, and that the court had no jurisdiction to try the cause. The demurrer being overruled, the appellants answered, setting up their title as acquired through Clallam county, and alleging that the land was duly assessed in Clallam county and was a part of Clallam county. The court granted a decree removing from respondent's title the cloud cast thereon by the execution and record of the said deed of Clallam county in Jefferson county, and quieting the title of the respondent against the appellants and each of them, and all persons claiming under them or either of them. From this judgment this appeal is taken.

There are three principal contentions in this case: (1) That the court had no jurisdiction to proceed with the trial of the cause, for the reason that it was an attempt to annul the judgment of a court of the same power and jurisdiction as the court before which this action was brought; (2) that the plaintiff, being a national bank, had violated the laws of Congress in regard to holding real estate as security, and that its title to the land thereby failed; (3) that the court had no right to admit contemporaneous testimony to determine the boundary line, and generally that the testimony did not sustain the findings of the court.

As to the first proposition, it is not necessary to discuss the question whether the county of Clallam would be bound by a judgment in this case. It is alleged in the complaint that the respondent is the owner of the land, that the land

is situated in Jefferson county, and that the deed complained
of constitutes a cloud upon its title. The judgment would
certainly be binding upon all parties who appeared in this
action, and that is sufficient upon the question of jurisdiction.

The second proposition of appellants has been set at rest
by the supreme court of the United States in the case of
*National Bank v. Matthews*, 98 U. S. 621, 25 L. Ed. 188,
where, after a review of the authorities, it was decided that,
where a corporation was incompetent by its charter to take
a title to real estate, a conveyance to it is not void but only
voidable, that the sovereign alone can object, and that it is
valid until assailed in a direct proceeding instituted for that
purpose; the court citing Sedgwick, Statutory & Const.
Constr., § 73:

"Where it is a simple question of authority to contract,
arising either on a question of regularity of organization or
of power conferred by the charter, a party who has had the
benefit of the agreement cannot be permitted in an action
founded upon it to question its validity. It would be in the
highest degree inequitable and unjust to permit a defendant
to repudiate a contract, the benefit of which he retains."

This case was followed by *National Bank v. Whitney*, 103
U. S. 99, 26 L. Ed. 443, where the court says that the ques-
tion presented is not an open one in that court, since the
determination of the case of *National Bank v. Matthews*
at the October term, 1878. To the same effect is *Reynolds
v. Crawfordsville First Nat. Bank*, 112 U. S. 405, 5 Sup. Ct.
213, 28 L. Ed. 733. In fact, this is the universal authority
on the subject, and the cases cited cannot be distinguished
from the case at bar.

The court, upon the trial of this cause, found that the
different laws upon the subject of the division of the coun-
ties was so doubtful that it could not be ascertained with
certainty just where the boundary was intended to be located,
and for that reason admitted the contemporaneous testimony
complained of. From an examination of these different acts

we think the court was warranted in coming to the conclusion to which it did come. It would be of no benefit to set forth the descriptions of boundaries without accompanying maps of the waters of the Pacific Ocean and of the Straits of Juan de Fuca, and of other straits and inlets, which it would not be practicable to set forth in an opinion. The boundaries in dispute being located in the water, a simple statement without an accompanying map would be unintelligible, and we therefore satisfy ourselves by saying that the description is ambiguous and doubtful. The appellants cite some cases to sustain their contention that, in any event, under the circumstances as shown by this case, contemporaneous testimony is not admissible. But a careful examination of all of the cases cited convinces us that they do not warrant the conclusion reached by the appellants, and that the overwhelming weight of authority is to the contrary; that the rule is as announced in the case of *Russell v. Robinson & Co.* (Ala.), 44 South. 1040, where, it appearing that there was no record memorial of the measurement of distances from the island in question to the respective shores at the time of the enactment of the statute, the court said:

"It would seem that no higher and better evidence could be offered than that of the assumptive and continuous exercise of jurisdiction over the territory by one county for many years, extending back beyond the memory of living witnesses, and which jurisdiction was acquiesced in by the citizens of both counties to a comparatively recent time, . . . the recordation of ancient deeds and conveyances of land situate in the disputed territory in a particular county, and ancient records of tax assessments showing that the property was assessed for taxes for a particular county, and like facts tending to show assumption and exercise of jurisdiction and acquiescence therein by the citizens, are relevant and competent facts in evidence."

This text is sustained by the overwhelming weight of authority. Among the most pertinent cases see: *Edwards County v. White County*, 85 Ill. 390; *Hecker v. Sterling*, 36 Pa. St. 423.

Coming then to the testimony, the court found, and the testimony shows, that immediately upon the passage of the act of 1858 the officers of Jefferson county assumed jurisdiction of said Protection Island, as a part of Jefferson county, and have continuously exercised such jurisdiction from that time to the present time, and are now exercising the same; that as early as the year 1860, by resolution of the board of county commissioners of said Jefferson county, Protection Island was expressly made a road district in Jefferson county, and that since 1862, and so long as there have been persons resident upon said island, said persons have voted in Jefferson county. It also appears that Protection Island has been a part of an election precinct in Jefferson county; that such residents have been summoned as jurors in the courts of Jefferson county; that in 1864 a resident of said island was a candidate at the general election for the office of sheriff of Jefferson county, and that the court, sitting in Jefferson county for the period aforesaid, exercised jurisdiction over said island, and said island has been a part of one of Jefferson county's school districts and one of Jefferson county commissioner's districts; and that all the instruments affecting the title to the land comprised in said island have been filed in the office of Jefferson county and not elsewhere, except that the Clallam county deed which is the subject of this action was recorded in the auditor's office of Jefferson and also in the auditor's office of Clallam county; that during the same period Clallam county has exercised no jurisdiction whatsoever over said island; that it has not been a part of any road district, school district, or commissioner's district of Clallam county, nor has it been a part of any election precinct of Clallam county, and no resident of the island has ever voted in Clallam county; nor has Clallam county ever assumed to have jurisdiction over the island except the assessment of taxes hereinafter referred to; that the assessment rolls of Jefferson county prior to the year 1877 have been lost or destroyed, but that an examination of the rolls of that.

county year by year from 1877 to date shows that Protection Island was assessed by Jefferson county each of said years, and the taxes so assessed were uniformly paid.

One John M. Powers, who owned the island from 1871 to 1874, testified that so long as he owned the island he was assessed by, and paid taxes to, Jefferson county. John F. Tukey, who had lived on Port Discovery since 1853 and who was a member of the board of county commissioners of Jefferson county in the 60's, testified that the island was always assessed by Jefferson county. In 1860 the Jefferson county commissioners defined the Port Discovery road district, which included specifically, by government subdivision, the land embraced in Protection Island. In November, 1862, a petition was presented by ten citizens of Jefferson county to set Protection Island off into a separate road district, which petition was granted, and one Buffington who lived on the island was appointed road supervisor. In 1868 the Jefferson county commissioners included the island in road district No. 1, and in June, 1868, the island was made a voting precinct, and was so continued for several years after that. The uncontradicted testimony of the residents of the island was, that they voted in Jefferson county; that one Buffington, while residing on Protection Island, ran for county office in Jefferson county, and the county commissioners' records show that the canvass of votes for sheriff in 1864 set forth that Buffington received one hundred and fifteen votes for that office. In fact, without further specifying, the testimony is overwhelming to the effect that the jurisdiction of Jefferson county over the island is absolutely unquestioned, both by the organized authorities of the county and by the residents of the island. Under such a state of facts we think the court was amply justified in reaching the conclusion that the island was a part of Jefferson county.

The judgment will be affirmed.

FULLERTON, CHADWICK, MOUNT, CROW, and GOSE, JJ., concur.