## CALCULATION OF DIVIDEND ON CERTIFICATE OF DEPOSIT IN INSOLVENT BANK.

Circuit Court of Cuyahoga County.

THE MUTUAL BANK v. THE CLEVELAND TRUST COMPANY, ASSIGNEE ET AL; TWO CASES.

Decided, January 5, 1911.

*Insolvent Estate—Dividend on Collateral Deposited with Another.*

A certificate of deposit in a bank which afterwards became insolvent, was deposited with another bank as collateral security for a debt due it; upon declaration of a dividend by the assignee of the insolvent bank. *Held:* That it should be computed upon the full amount of said certificate of deposit, notwithstanding that meanwhile the debt to which it had been pledged as collateral had been reduced, but not below the amount of such dividend.

*Stearns, Chamberlain & Royan,* for plaintiff.
*Blandin, Rice & Ginn,* contra.

HENRY, J.; WINCH, J., and MARVIN, J., concur.

This action was brought by the Mutual Bank, a corporation organized under the laws of the state of Illinois, against the Cleveland Trust Company, as assignee in insolvency of the Euclid Avenue Trust Company, to require the allowance by said assignee of plaintiff's claim against the insolvent's estate.

The Assets Realization Company was subsequently given leave to become a party defendant, while this case was pending in the court of common pleas, and shows by its answer that it has, with the approval of the insolvency court, purchased all the

assets of the insolvent's estate for a sum equivalent to fifty per cent. of all claims that are or may be allowed in the settlement of the trust.

The grounds of defense alleged by the defendants respectively, will appear in the further statement of the case.

The facts, as shown in evidence, are substantially as follows:

Early in 1908 the Euclid Avenue Trust Company was called upon by the Cleveland Clearing House Association to meet certain demands imposed by said association, as a condition of its continuing to enjoy the privileges of the clearing house. To enable it to meet these demands, R. S. Thomas, the treasurer of the Euclid Avenue Trust Company, while in New York, issued to P. J. Keiran, a certificate of deposit, in words and figures as follows:

"$50,000.00              CLEVELAND, O., Feby. 21st, 1908.
                    P. J. Keiran has deposited with
              THE EUCLID AVENUE TRUST COMPANY,
fifty thousand dollars, payable December 1st after date, in current funds to the order of himself, on the return of this certificate properly endorsed. . Interest 4% per annum.
                      "(Signed)   R. S. THOMAS,
                                        "*Treasurer.*"

Said certificate of deposit is endorsed as follows:
                      "P. J. KEIRAN."

On returning to Cleveland the treasurer informed his associates in the trust company of what he had done, and minuted the fact of issuance of the certificate in the trust company's register of its certificates of deposit issued.

In co-operation with Mr. Keiran, the treasurer had made arrangements with Mr. Clifford Ladd, of New York, by which the latter had agreed to accept and pay a draft for $50,000 upon himself, in exchange for this certificate of deposit, and the certificate was given to Keiran to be delivered to Ladd on payment of said draft.

The arrangement with Ladd having fallen through, Keiran told Thomas that he could obtain the $50,000 in Chicago, whither he then took the certificate of deposit, requesting Thomas to wait his

return in New York.  Returning to New York, Keiran advised Thomas that he had negotiated the certificate with the Mutual Bank and that the money would be in Cleveland upon his arrival.  Mr. Thomas thereupon went back to Cleveland and on the morning of March 16th received a letter from the Mutual Bank stating that the certificate of deposit had been offered to it as security for a loan, and requesting advices as to its regularity.  To this letter Thomas replied on the same day assuring the Mutual Bank that the certificate would be paid by the trust company at maturity.  Keiran had in fact negotiated the certificate with the Mutual Bank, which had already made a loan or loans on the security thereof and of other collateral, to the Benedictine Sisters, of Nauvoo, Illinois, and the proceeds of the loan, by reason of Keiran's breach of trust, never reached the trust company.  Except that the statutes of Illinois prohibit corporations of the class to which the Mutual Bank belonged from making any loans in excess of ten per cent. of their paid-up capital, the limit, thus fixed, being in the case of the Mutual Bank, $25,000, the loan which it made upon this certificate was negotiated in the regular and usual course of business.  The loan was evidenced by three notes, executed by Keiran and others, who furnished the collateral, and directed the amount of the loan to be credited to the Benedictine Sisters.  Before the fraud was discovered the amount so credited had all been drawn out and the notes renewed, upon the assurance, as aforesaid, that the certificate of deposit would be paid at maturity.  Since then the makers, other than Keiran, have paid $25,000 of the loan, leaving an equal amount unpaid; as security for the payment of which the Mutual Bank still holds the original collateral, including the certificate of deposit for $50,000.  It now seeks to have the certificate of deposit allowed at its face by the assignee of the Euclid Avenue Trust Company.  If this is done, it will receive by way of the fifty per cent. dividend payable to all the creditors of the Euclid Avenue Trust Company, an amount almost exactly equivalent to the total amount of the remaining debt secured by said certificate.

The defendants, however, insist that the loan having been made in violation of the Illinois statute, the collateral pledged

as security therefor can not be enforced, in view especially of the fact that the certificate was issued wholly without consideration by and negotiated in fraud of, the Euclid Avenue Trust Company; and they further urge that even if the claim should be allowed, there should first be deducted therefrom, under authority of *Bank* v. *Esterly,* 69 Ohio St., 24, the amount already paid upon the loan.

Regarding the first of these defenses, it must be observed that the Mutual Bank can not be affected by Keiran's fraud. He was authorized by the Euclid Avenue Trust Company to negotiate the certificate,, and his fraud consisted only in the misapplication of the proceeds. The circumstances under which the loan was negotiated are not such as to charge the Mutual Bank with any notice of, or responsibility for, Keiran's subsequent conduct. If the loan was *ultra vires,* the settled law in this country is that no advantage thereof can be taken by the debtor. Whatever the form of action or theory of recovery in different jurisdictions may be, the fact remains that this certificate secures the debt and is likewise enforceable. *Bank* v. *Mathews,* 98 U. S., 621.

Concerning the other defense founded upon the rule of *The State National Bank* v. *Esterly, supra,* and upon General Code, Sections 11134 and 11141, it should be noted that the construction and application of this decision and these statutes as here invoked, would always defeat the very purpose in view when an ample margin of security has been exacted for a loan and where, to meet an unpaid balance thereof, resort to the security is had after its value is impaired by insolvency. We do not so interpret the statutes in question nor so apply the Esterly case.

The syllabus of that decision is as follows:

"When the property of an insolvent debtor, by order of court, is placed in the hands of a receiver to be administered upon for the payment of the insolvent's debts, a creditor who holds collaterals taken as security for his claim, and upon which he has realized before a dividend is declared, is entitled to a dividend on only so much of his debt as remains after deducting the proceeds of the collaterals, and this sum may be ascertained at the time the dividend is declared, although the claim had formerly been proven and allowed for the full amount."

Here it is not a residue of the principal debt which is sought to be enforced against an insolvent debtor. The purpose here is rather to subject to the payment of the residue of the principal debt the collateral pledged as security therefor. No reason appears why the stipulated margin of security, depreciated as it is, should now be wiped out because a part of the original debt has been paid. The plaintiff's claim, we hold, should be allowed at its face, and on distribution it should be paid in the same proportion that the other claims are paid, not exceeding the debt secured. The appeal of the Assets Realization Company will be consolidated with that of the Cleveland Trust Company and judgment rendered as in the court below. In this form of action the judgment can not ordinarily embrace other matters than the allowance; and we make no order concerning interest or the equities, if any, arising from the fact that other collateral was also pledged for this debt.

---

## VARIANCE BETWEEN JUDGMENT AND ISSUES RAISED.