The First National Bank of Ft. Dodge v. Haire.

---

THE FIRST NATIONAL BANK OF FT. DODGE v. HAIRE *et al.*

$\frac{36}{127} \frac{443}{599}$

1. **Practice:** DISMISSAL OF CAUSE. Where a plaintiff by his counsel enters a dismissal of his cause in writing on the back of the petition, with the manifest intent of dismissing it, and both parties act accordingly, the action will be deemed dismissed and its pendency cannot be relied upon to defeat a subsequent action for the same cause.

2. **Husband and wife:** CAPACITY OF WIFE. A married woman may bind her separate property by executing a bond, and a mortgage upon such property to secure the payment of the same.

3. **National banks:** RIGHT TO INDEMNITY HELD BY SURETY. A national bank refused to negotiate a loan upon the responsibility of a firm, but agreed to and did make the loan upon a note made by one member of the firm to the other and indorsed by the latter to the bank, the maker giving a bond and mortgage upon separate property to secure the indorser against liability upon his indorsement, with an agreement that in case of default the security should inure to the bank. *Held*, that the bond and mortgage were not within the prohibition of section 28 of the act of congress creating national banks, against such banks holding real estate by purchase or mortgage, that the same were, therefore, legal and binding, and might be enforced for the benefit of the bank.

4. ——BANKRUPTCY. That such bond and mortgage were not, in fact, assigned to the bank until within four months preceding the commencement of the bankruptcy proceedings, will not defeat the prior right of the bank, since its equitable rights inhere in the original transaction, and attached at the execution of the bond and mortgage.

*Appeal from Webster District Court.*

WEDNESDAY, APRIL 30.

THIS is a suit in equity commenced on the 31st day of January, 1871, against Mary M. Haire and John Haire as mort-

gagors, John H. Taafe as indorsor of certain notes, W. H. Johnson, assignee in bankruptcy of Haire & Co., and numerous other persons as creditors and junior lien holders, etc. The pleadings were several times amended, once, after the evidence was closed, and under the issues made, the ultimate facts as stated in the opinion were established. The district court adjudged a foreclosure as prayed for. The defendants Mary M. and John Haire and W. H. Johnson, assignee, etc., appeal.

*Polk, Hubbell & Goode* and *Galusha Parsons* for the appellants.

*W. H. Johnson pro se, Duncombe & Springer* for the appellee.

COLE J. — Under the issues made by the pleadings as amended, the following facts are proved: In 1856 John Haire began a general mercantile business in Ft. Dodge, with the funds and in the name of his wife, Mary M. Haire, he acting as her agent; and continued it till Nov. 1st, 1866, when a partnership was formed between Mary M. Haire and John H. Taafe, under the name of Haire & Co., by whom the business was continued, John Haire acting in the new firm business, for and on behalf of his wife. By the terms of partnership, each was to furnish $4,000 capital, Taafe furnished his in cash at once; but Mrs. Haire then only furnished the stock of goods on hand, worth, as agreed, $1,530. While Mrs. Haire was doing business alone she acquired the title to lots 4 and 5, in block 23 of Ft. Dodge, and upon the former, she had erected a storehouse, and residence used as a homestead.

On the 25th of January, 1869, the firm of Haire & Co. was largely indebted, but was in good credit and was supposed to be solvent. The firm desired to borrow of plaintiff $5,000, which plaintiff was unwilling to loan, on the bare credit of the firm. It was then agreed between all the parties, that since Mrs. Haire had not paid up all her capital stock to the firm, the firm

of Haire & Co. should execute two notes for $2,500 each, payable to the order of John H. Taafe at the plaintiff's bank, sixty days after date; that Taafe should indorse the same to plaintiff; and further, that the said Mary M. and John Haire should also execute a bond in the sum of $10,000 to Taafe to secure him on account of such indorsements, and the renewals thereof for one year, and should also execute to Taafe a mortgage upon the said two lots to secure the performance of the conditions of said bond, and with the distinct understanding that in case said parties failed to pay the notes, this security should inure to the benefit of the plaintiff. The papers were all duly executed accordingly, and the plaintiff discounted the notes and placed the proceeds to the credit of the firm on the books of the bank with which the firm had theretofore been doing business. The proceeds were used in paying the debts of the firm, $1,016 of which was to the bank on a note then due, and a part of the balance was used in paying debts to merchants, then in the bank for collection.

The notes were afterward renewed in April and in September, but the renewals were made in the name of Mary M. Haire, and indorsed by Haire & Co., and by Taafe; no part of either has ever been paid. A power of attorney of same date as the bond was executed by Taafe to E. G. Morgan, who was a cashier in the bank, authorizing him to assign the bond and mortgage; and the bond was also indorsed, in blank, by J. H. Taafe. The bond and mortgage came to the possession of the plaintiff about the time of the first renewal, but the assignment, by the attorney in fact, was not written out or signed till January 6, 1870.

In October, 1869, a difference arose between the members of the firm of Haire & Co., and each commenced a suit against the other to close up and settle the partnership; these suits were consolidated and a receiver of partnership effects was appointed and had made considerable progress in the settlement of the affairs, when, and on the 21st day of February, 1870, a petition in bankruptcy was filed in the U. S. district court for Iowa, by creditors against the firm of Haire & Co.

The firm and Taafe were adjudged bankrupts; but, on demurrer, the proceeding as to Mrs. Haire was dismissed on the ground that she was a married woman. The effects of the firm and of Taafe were transferred to assignee by deed of date June 8, 1870.

Prior to bringing this action, the plaintiff commenced a like action in the circuit court; the defendants demurred to the petition; the demurrer was argued, and pending its consideration, the plaintiff entered a dismissal of the action in the clerk's office; no further proceedings have ever been had in it, and both parties have treated it as dismissed.

I. *As to the pendency of the former action.* It was the manifest purpose and intent of the plaintiff to dismiss the action in the circuit court; that purpose was very plainly expressed in writing on the petition, duly signed by the plaintiff's attorneys, and it has been so treated by the parties. Even if the proper formalities were not complied with, it would estop the plaintiff from claiming any thing by his action. It was a dismissal in fact. Being so, its alleged pendency cannot abate this action.

1. PRACTICE: dismissal.

II. *As to the capacity of the wife, Mary M. Haire, to execute and bind herself or property by the notes and the bond and mortgage.* It was held by this court, in *Jones* v. *Crosthwaite*, 17 Iowa, 393, that a married woman could not be made liable *in an action at law* upon her note or contract as surety or other executory contract. But her right and power to execute such contracts and bind her separate property thereby, so as to entitle the beneficiaries therein to enforce them, as against her property, in a court of equity, was not denied; on the contrary, it was impliedly, if not expressly, recognized. And in the subsequent case of *Patton* v. *Kinsman*, 17 Iowa, 428, the opinion in which was prepared by the same judge (DILLON) and at the same time, it was expressly *held*, that such contracts by a married woman might be enforced against her separate property, in a suit in equity, and such relief was granted in that case. These cases have been repeatedly fol-

2. HUSBAND AND WIFE: capacity of wife.

lowed since. The wife, therefore, had the capacity to execute the notes and the bond and mortgage and to bind her separate property for their payment. They were not void.

III. *As to the right of the plaintiff, upon general equity principles, to the benefit of the bond and mortgage executed by Haire and husband to Taafe.* It will be re-

.3. NATIONAL BANKS: right to indemnity held by security.

membered that the execution of this bond and mortgage by Mrs. Haire and her husband, to Taafe, as the indorser of the notes, was the condition upon which the plaintiff would loan the money, or discount the notes; and the bond and mortgage were executed for the express purpose of increasing the security by enhancing the value of Taafe's indorsement. Upon the faith of this enhanced value, Mrs. Haire, for the benefit of herself individually and of the firm of which she was a member, obtained the loan of the plaintiff. To allow her now to set up matters between herself and Taafe, to defeat the mortgage and the purpose of its execution, would be violative of the plainest principles of equity. The facts create an equitable estoppel in behalf of plaintiff as against Mrs. Haire.

IV. *As to the effect of the limitation of the plaintiff's powers, by the act of congress creating national banks.* By that act it is provided in section 8, that such banks shall have power to loan money *on personal security.* Section 28 provides as follows : " And be it further enacted that it shall be lawful for any such association to purchase, hold and convey real estate, as follows : *First.* Such as shall be necessary for its immediate accommodation in the transaction of its business. *Second.* Such as shall be mortgaged to it *in good faith* by way of security *for debts previously contracted. Third.* Such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings. *Fourth.* Such as it shall purchase on sales under judgments, decrees or mortgages held by such association, or shall purchase to secure debts due to said association. Such association *shall not purchase* or hold real estate in any other case or for any other purpose than as specified in this section, nor shall it hold the

possession of any real estate under mortgage, or hold the title and possession of any real estate purchased to secure any debts due to it, for a longer period than five years."

This is the whole of the section and all of the law having any bearing upon the question; the *italics* are those of the appellant's counsel, and serve to call attention to the particular language upon which their claims are grounded. It is claimed by the defendants, Mary M. Haire and her husband, John Haire, that the mortgage was executed to secure a debt contracted contemporaneously with its execution, and if it was intended to inure to the benefit of the bank, it was void by force of the section of the act of congress above quoted, and hence cannot be foreclosed in favor of the plaintiff.

We would not construe this, or any other statute, strictly and by its very letter only; but would look to its object and purpose, and give to its language such just and fair interpretation as would most completely effectuate that purpose. Not forgetting this, let us look first at its terms. It does not prohibit the mortgage of real property to another to be by that other held as security for a contemporaneous loan made by the bank; it says in effect that the bank may hold such real estate as shall be *mortgaged to it* in good faith for debts previously contracted, and that *such association* (bank) shall not hold real estate for any other purpose than as specified. Now, it will be noticed that the real estate in controversy was not mortgaged *to* the plaintiff and that the plaintiff does not now hold ·it. Hence, this case is not within the letter of the statute.

But it is claimed that the effect of the transaction, as claimed by plaintiff and as proved, is the same as a mortgage to it, and therefore, it is within the spirit or purpose of the law. When prudent officers of a bank are asked to make a loan, they look *inter alia* to the ability of the borrower to pay as evidenced by his property, real and personal. If he has not sufficient property, they decline the loan; but if some friend of his shall convey to him in fee sufficient real estate, the same officers might make the loan. The loan, so made, would not be within the act, although the officers, in good faith, relied upon such

real estate by way of security for the repayment of the loan. And, if an indorser was offered who was thought insufficient, but when certain real estate was conveyed to him, he was regarded as sufficient, the rule would be the same. And, if, instead of being conveyed absolutely, it was simply mortgaged to the indorser, and thereby he was thought to be sufficent security, the rule would not be different. In either case the reliance would be upon the real estate and the ability to pay by reason of it. Neither would be within the prohibition of the act of congress. Nor would it alter the case, if the borrower or indorser should say to the officers, if I fail to pay at maturity, there is the real estate and you may subject it to the payment of the debt. This they could do without such declaration. In other words, every loan or discount by a bank is made in good faith, in reliance, by way of security, upon the real or personal property of the obligors, and unless the title by mortgage or conveyance is taken to the bank or directly for its use, the case is not within the prohibition of the statute. The fact that the title or security may inure indirectly to the security and benefit of the bank, will not vitiate the transaction. Some of the cases upon quite analogous statutes go much further than this. *Silver Lake Bank* v. *North*, Johns. Ch. 370.

There is another view of the entire transaction which leads to the same conclusion. It is this: If we look to the transaction in view of its ultimate effects only, then we would find that the mortgage becomes a security to the bank and that the money was wholly applied to debts of the mortgagor previously contracted. So that, upon *its face* the transaction is not inhibited by the statute, nor does it effectuate results contrary to either its letter or spirit. The manifest purpose of the inhibition was to prevent such associations from acquiring or holding the title to real estate, except so far as necessary in order to accomplish the legitimate objects for which they were created.

V. A point is made, but not confidently pressed, that the evidence shows Mrs. Haire to have executed the mortgage

under duress of her husband. She does not so directly testify; and the testimony, on that point, aside from hers, is entirely against such a theory.

Some effort is also made to show that the notes sued upon, or now held by the bank, are different from the notes described in the bond, and hence a foreclosure cannot be had. But there is no dispute that the notes were given in renewal of those described in the bond, and that the original debt secured by the mortgage is evidenced by them. This is sufficient.

VI. On the part of the assignee in bankruptcy, it is urged, that since the assignment of the bond and mortgage was made within four months prior to the bankruptcy pro-

4. —— bankruptcy.

ceedings, and after the plaintiff had actual knowledge, as it is claimed, of acts of bankruptcy, no rights could be acquired thereby. But, as we have seen, the rights of this plaintiff inhere in, and arise out of the original transaction and relate to it. So far as its real equities are concerned, the date of the assignment by the attorney in fact of the mortgagee is quite immaterial. No question is made by the assignee or other party respecting the rightful jurisdiction of the district court of the State over the whole matter.

We have given to the case a careful examination and find our views result in entire accord with those of the learned district judge who tried the case in the court below. Inasmuch as the evidence tends to show a homestead right in a part of the mortgaged property, it will be ordered that the homestead shall not be sold, except to satisfy any deficiency remaining after the sale of the other property liable to either a general or special execution in this case.

Affirmed.