NATIONAL BANK OF NORTH AMERICA *vs.* EDWARD R. THOMAS.

JANUARY 31, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Attachment. Title to Real Estate. Record of Deed.*

Upon issues as to (1) whether the property in the real estate was in defendant at the time of the attachment, and (2) if not in the defendant at such time, whether plaintiff had notice of that fact at the time of the attachment, where upon the first issue the only testimony offered was that of defendant that he executed a deed to his wife, November 10, 1905, and delivered it to her either November 10 or 11, 1905, long before the subject-matter of the suit arose, and that the deed was not recorded until December 23, 1907, after the date of the attachment, the jury were justified in finding that the property in the real estate was not in defendant at the time of the attachment.

(2) *Same.*

Upon issues as to the ownership of real estate attached and the notice to plaintiff as to such ownership at the time of the attachment, the deed of the real estate from defendant to his wife, and testimony as to the delivery of such deed, were properly admitted.

(3) *Notice to Officer of Corporation, of Material Facts.*

Where all the negotiations leading to a loan from plaintiff bank to defendant were conducted by M., the vice-president of the bank, and the terms of the loan were arranged between M. and defendant, in these circumstances, facts material to the transaction which came to the knowledge of M. constituted notice to the plaintiff, and it is immaterial whether M. communicated his knowledge to the other officers of the bank, or whether he remained an officer of the bank until the time of the attachment brought upon the note given for such loan.

(4) *Agency. Notice.*

Where it appeared that in negotiations for a loan held between an officer of a bank and defendant, one of the questions under consideration was the financial standing and credit of defendant, statements as to the ownership, by defendant, of real as well as personal estate were material to the transaction and constituted notice to plaintiff, and the fact that the loan was not made upon the security of the real estate does not render the statements immaterial.

(5) *National Banking Act.*

Although under the banking act a national bank may not loan money upon real estate security given directly to the bank, the fact that the title or security may inure indirectly to the security and benefit of the bank will not vitiate the transaction.

(6) *Agency. Evidence.*

Where negotiations for a loan from plaintiff bank to defendant were carried on by M., a vice-president, and as a result the loan was made by the bank, evidence as to what officers regularly had authority to make loans was immaterial; since in this transaction M. was the agent of the bank, whatever may have been the usual procedure.

ASSUMPSIT. Heard on exceptions of plaintiff, and overruled.

SWEETLAND, J. This is an action on a promissory note for $50,000, made by the defendant to the order of the plaintiff. The plaintiff is a national banking association, located and doing business in the city of New York. The defendant is a resident of the State of New Jersey. There was no personal service of the writ upon the defendant within this State, but real estate in the city of Newport, standing upon the land records of said Newport as the real estate of the defendant, was

attached. An attested copy of the writ was sent by mail, directed to the defendant at his address without the State, and a copy of the writ was left with the person in possession of the real estate. The defendant pleaded in abatement of the writ, that there had been no legal service of the writ; that the defendant at the time of the attachment had no right, title, or interest in the real estate attached; that the property in said real estate had been in the wife of the defendant for a long time ,prior to said attachment, and that the plaintiff had notice of these facts. To this plea in abatement the plaintiff replied that at the time of the attachment the property and the title of record in said real estate was in the defendant and not in his wife; that the wife of the defendant did not have any interest in said real estate until a month after the attachment, when a deed of said real estate from the defendant to his wife was recorded in the land records of Newport; that the attachment was filed without notice on the part of the plaintiff of any prior conveyance of said real estate by the defendant to his wife, and without notice of any right in said real estate claimed by the defendant's wife.

, The issues raised by the plea and replication were tried in the Superior Court, before a jury. The questions before the jury upon these issues were, first, whether the property in said real estate was in the defendant at the time of the attachment; and second, if this property in said real estate was not in the defendant at the time of the attachment, whether the plaintiff had notice of that fact at the time of the attachment. The jury found that the defendant had no property, right, title or interest in said real estate subject to attachment at the suit of the plaintiff, and that of this the plaintiff had notice. The plaintiff's motion for a new trial was denied by the Superior Court, and the case is before this court upon the plaintiff's exceptions to the decision of the justice presiding denying the motion for a new trial; and to certain rulings of said justice, made during the trial.

Upon the first question before the jury the only testimony offered at the trial was that of the defendant, who testified that he executed a deed of said real estate to his wife on the 10th of November, 1905, and delivered said deed to his wife on the

10th or 11th of November, 1905, long before the transaction between the plaintiff and the defendant, which was the subject of this suit. Said deed was not recorded in the land records of Newport until December 23rd, 1907, after the date of said attachment. It also appeared that no child had ever been born of the marriage between defendant and his wife. The jury were justified in finding that the property in said real estate was not in the defendant at the time of the attachment.

Upon the second question before the jury, as to whether the plaintiff had notice, at the time of the attachment, that the property in said real estate was not in the defendant, the defendant testified that he went to the banking rooms of the plaintiff, and into the private office of Charles W. Morse, vice-president of the bank, and that the following transaction was had between the defendant and said Morse: "I spoke to him, and told him I wanted a loan of $50,000.00, and he said, 'Well, I don't know whether we can loan you the money or not.' He said, 'Can you put up any security?' I said 'No, I don't think I have any.' He said, 'How about your house?' I said, 'My house in the city was deeded to my wife by my mother before my father died.' Then he said, 'How about your Newport property?' I said, 'I gave it to my wife two years ago;' but I told him I could get certain deposits for the bank, and could help the bank, I thought, if he would make the loan. He said, 'All right, I will make the loan.' He then called in the president, Mr. Curtis, who sat with the cashier and clerks in the outer office, or room, and he stated to Mr. Curtis, 'I have arranged the details of a loan for Mr. Thomas. When he sends over his note, it may be discounted and the money placed to his credit in the bank, and you may make out the loan.' Then Mr. Curtis went out. Q. Continue— A. That afternoon I sent over my note for $50,000.00, to Mr. Morse by a boy. I told him that I wouldn't want the money for a couple of days. I sent over the note in pursuance of that conversation that morning, and the money was put to my credit, and they sent me a record of the money being put to my credit at that time. Q. You sent your personal note for $50,000.00, payable to the National Bank of North America, sent it to the National Bank, accom-

panied by a letter? A. I sent it to Mr. Morse, personally. Q. And the letter was addressed to Mr. Morse, personally? A. Yes, sir. Q. In consequence of that was the loan of $50,-000.00 placed to your credit? A. Yes, sir."

Charles W. Morse, whose deposition was taken, deposed that at the time of the attachment he had ceased to be vice-president of the plaintiff corporation; that he learned of the attachment from a newspaper, and that previous to the attachment he had no knowledge in regard to the ownership by the defendant of property in Rhode Island. In regard to the interview between himself and the defendant, at the time of making the loan, Mr. Morse testified: "Q. About the date of the note involved in this suit, you had an interview with Edward R. Thomas, did you not? A. Yes, sir. Q. Did he, at that interview, make any statement to you in respect to any property owned by him in Newport, or standing in his name? A. To the best of my recollection, he did not. Q. Did the defendant, Edward R. Thomas, ever make any statement to you in respect to his real estate in Newport? A. No, sir. Q. Was any statement ever made to you at any time by Edward R. Thomas, in respect to any property of his in Newport, Rhode Island? A. No, sir. Q. Was any reference made by him in any conversation between you and Edward R. Thomas in respect to any of his property in Newport, Rhode Island? A. I have no recollection of any. Q. Was any statement ever made by Edward R. Thomas to you, in respect to any conveyance by him of his real estate in Newport, Rhode Island, to his wife? A. No, sir."

There was no other testimony upon the subject of the interview between the defendant and Mr. Morse. Upon this testimony, under the rulings and instructions of the justice presiding, the finding of the jury that the plaintiff at the time of the attachment had notice of the unrecorded deed from the defendant to his wife, was not unwarranted. The justice presiding at the trial has refused to set the verdict aside, and this court will not disturb it unless we find error in the rulings of said justice.

(2)   The plaintiff urges its exceptions to the ruling of the justice permitting the introduction in evidence, by the defendant,

of the deed of the real estate in question from the defendant to his wife, and admitting testimony as to the delivery of said deed to the defendant's wife. This deed and testimony were properly admitted upon the issue of the ownership of said real estate at the time of the attachment.

(3)    A number of the exceptions contained in the plaintiff's bill of exceptions are based upon the contention that, even if notice of the conveyance of said real estate from the defendant to his wife was given to Charles W. Morse, such notice to Mr. Morse did not constitute notice to the bank. It is clear from the testimony that all the negotiations leading to the loan by the plaintiff to the defendant were conducted by Mr. Morse acting for the plaintiff, and that the terms of the loan were arranged between said Morse and the defendant. In these circumstances, facts material to the transaction which came to the knowledge of Morse constituted notice to the plaintiff. It is immaterial whether Mr. Morse communicated his knowledge to the other officers of the bank, or whether Mr. Morse remained an officer of the bank until the time of the attachment. Mr. Morse was the agent of the plaintiff in this transaction, and any knowledge of material facts which he acquired at that time became at once the knowledge of the plaintiff. *Cook* v. *American Tubing & Webbing Co.*, 28 R. I. 41; *Bank* v. *Cushman*, 121 Mass., 490.

Other exceptions contained in the bill are based upon the plaintiff's contention that any statements of the defendant regarding the ownership of the Newport real estate, even if such were made to said Morse in the course of the negotiations for the loan, were not material to the transaction; that the national banking law prohibits national banks from loaning money on real estate security; and that any knowledge in regard to the ownership of said real estate gained by said Morse during the transaction can not be imputed to the plaintiff, and does not constitute notice to the bank. In regard to this exception of (4) the plaintiff, it appears that one of the questions under consideration in the negotiation was the financial standing and credit of the defendant; hence, statements as to the ownership by the defendant of real as well as of personal estate were

material to the transaction.   Although under the provisions of the banking act a national bank may not loan money upon real estate security given directly to the bank, real estate owned by the borrower may be used in various indirect ways for the purpose of giving security to the bank.   In *Bank* v. *Haire,* 36 Iowa, 443, the court said: "Every loan or discount by a bank is made in good faith, in reliance, by way of security, upon the real or personal property of the obligor; and unless the title by mortgage or conveyance is taken to the bank directly, for its use, the case is not within the prohibition of the statute.   The fact that the title or security may inure indirectly to the security and benefit of the bank will not vitiate the transaction."

Further, it has been held that, although there is an implication in the United States banking laws that national banks shall not loan money on real estate security, such security is not void, and objection to such security can only be urged by the United States government.   In *Bank* v. *Matthews,* 98 U. S. 621, the court said: "The statute does not declare such security void.   It is silent upon the subject.   If Congress so meant, it would have been easy to say so; and it is hardly to be believed that this would not have been done instead of leaving the question to be settled by the uncertain result of litigation and judicial decision."   In following *Bank* v. *Matthews,* the court said, in *Bank* v. *Whitney,* 103 U. S. 99: "The construction of the act of Congress thus given (*Bank* v. *Matthews*) has been acted upon by the national banks throughout the country ever since it was published.   It is not unreasonable to suppose that they have conducted their business and made loans to a large amount in reliance upon it, and that in many cases, great injury would follow a departure from it. . . .   We must hold that the mortgage to the bank, so far as the subsequent incumbrances are concerned, is to be regarded as a valid security for the future advances to the mortgagor.   Whatever objection there may be to it as security for such advances from the prohibitory provisions of the statute, objection can only be urged by the government."

We are of the opinion that statements in regard to the ownership of said real estate in Newport, made by the defendant to

said Morse in the course of the negotiations for the loan, were material to that transaction and constituted notice to the plaintiff. The fact that the loan was not made upon the security of the real estate does not render the statements immaterial.

The plaintiff also excepts to the ruling of the justice refusing to allow the question to Charles W. Morse: "Q. 4. Whose duty was it in the National Bank of North America to make the loans?" If such question was otherwise proper the answer to it would not be the best evidence of the fact sought. The plaintiff should have produced better evidence than the testimony of this witness as to the duties of its officers and the authority given to them by the corporation. The question, however, was immaterial as to what officers regularly had authority to make loans. The testimony clearly shows that the negotiations for this loan in question were carried on by Mr. Morse, and that as a result of these negotiations the loan was made by the bank. In this transaction Mr. Morse was the agent of the bank, whatever may have been the usual procedure in the bank in making loans.

The plaintiff also excepts to the instructions of the justice upon the defendant's third, fourth, and fifth requests to charge the jury. These requests and the instructions of the court are as follows:

"III. That the jury may consider, in weighing Morse's testimony, that he is the owner of at least one-fourth of the bank and of all its assets above its liabilities; and he is therefore interested to that extent in any recovery in this action.

"THE COURT: If that is the testimony; I recall that he is interested to some extent, in various ways. You should consider all his interest, that among other things, consider that interest and weigh it in judging of the credence you should give to his testimony.

"IV. That the jury may consider in weighing Morse's testimony the fact that as an officer of the bank he is liable to it for any loss from any gross negligence in making a loan without proper security, and therefore interested to aid in the collection of such a loan to prevent any liability on his own part.

302 NATIONAL BANK OF NORTH AMERICA v. THOMAS.    [30

"THE COURT: I so instruct you, gentlemen. You should consider that, and any interest that he has, as I said before, to maintain the suit, in considering the weight you should give to his testimony.

"V. That the jury may consider, as bearing on Morse's credibility, the fact that he repeatedly evaded answering the question whether he had not in January last sworn that he had no transactions with Thomas, with reference to this loan.

"THE COURT: I instruct you this, gentlemen—I will not instruct you in those words—you should consider all his testimony, his manner of giving it, his apparent frankness, the readiness with which he answered questions in cross-examination, and consider any evasion or refusal to answer questions, bearing in mind, however, that in a great many questions, as appears in the deposition, he was acting under the advice of counsel. Consider all his testimony, his interest, his frankness, and give to his testimony such weight as you think it is reasonably entitled."

We find no error in these instructions of the justice of the Superior Court.

We have not considered the question raised by the defendant in his brief: that the court had no jurisdiction in the case, because there was no service of the writ except by attachment of property in which the defendant had no interest; that an attaching creditor in Rhode Island secures no greater rights in the property attached than the debtor had in the property at the time of the attachment; that an unrecorded deed has priority over an attachment. This point of the defendant is not before us upon the consideration of the plaintiff's bill of exceptions, and we make no decision upon it.

Plaintiff's exceptions are overruled, and the case is remitted to the Superior Court, with direction to enter judgment upon the verdict and to quash the writ.

*Sheffield, Levy and Harvey*, for plaintiff.

*John C. Burke*, for defendant.

*William H. Thornley*, and *William W. Moss*, of counsel.