## FRED L. VOLTZ *et al.*

### *v.*

## THE NATIONAL BANK OF ILLINOIS.

*Filed at Ottawa October 11, 1895.*

1. BANKS—*guaranty of checks by one bank for another for clearing house purposes—rights and remedies.* A bank which guaranteed payment of checks upon another bank that was not a member of a clearing house association, in order to clear them, and after the latter bank had made an assignment, and a check thereon which had been certified for the drawers had been refused at the clearing house, paid the check in pursuance of the guaranty, did not do this as agent of the other bank, but became an assignee of the check, with the right to recover thereon against the drawers.

2. SAME—*contract of guaranty ultra vires—to whom doctrine is available.* Even if a guaranty of checks by one national bank to another for clearing house purposes is *ultra vires*, this fact will not avail the drawers of a check who are not parties to the guaranty, when charged with liability to the bank, which, in compliance with its said guaranty, had paid the check and become an assignee thereof after the drawee became insolvent.

3. SUBROGATION—*bank paying check in pursuance of guaranty may claim subrogation.* A bank which pays a check in pursuance of a guaranty, even if that was *ultra vires*, is not a mere volunteer, so as to be precluded from claiming the rights of the person to whom payment was made, by subrogation.

*Voltz* v. *National Bank of Illinois,* 57 Ill. App. 360, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

This cause is brought to this court by appeal, on a certificate of importance from the Appellate Court for the First District.

On and for some time prior to June 3, 1893, there was in the city of Chicago an association known as the "Chicago Clearing House." The membership of that association comprised certain of the Chicago banks, and its purpose was to facilitate the daily settlement between

those banks. The National Bank of Illinois, appellee, and the First National Bank of Chicago, were both members of that association. On and for some time prior to June 2, 1893, Herman Schaffner & Co. were engaged in business as private bankers in the city of Chicago. They were not in the clearing house association, but, through an arrangement between them and appellee, checks drawn upon the former were cleared by the latter. In order to make this arrangement effective, so that checks drawn upon Herman Schaffner & Co., and certified, would be received by the clearing house banks, it became necessary for appellee to guarantee the payment of such checks.

On June 2, 1893, the First National Bank held for collection a draft for $581.03, drawn on appellants, F. L. Voltz & Co., and by them accepted. On that day, appellants, who then had funds on general deposit with Herman Schaffner & Co., drew a check upon the latter for the sum of $581.03, had it certified, and delivered it to the First National Bank in payment of the draft. That check was received by the First National Bank between eleven and twelve o'clock on June 2, and too late to be put through the clearing house on that day. At about 8:30 A. M. of June 3, 1893, Herman Schaffner & Co. made a voluntary assignment for the benefit of their creditors. They then ceased doing business and are still insolvent. On June 3, 1893, the First National Bank presented said check, through the clearing house, to the National Bank of Illinois. The payment of it was refused on account of the insolvency of Herman Schaffner & Co. The cashier of the First National thereupon called the attention of appellee to the guaranty in evidence, and appellee issued its cashier's check for the amount, and the check in suit was endorsed "without recourse," by the First National Bank, and delivered to appellee. The amount of the check was charged by appellee as an overdraft of Herman Schaffner & Co.'s account, and it subsequently filed

a claim for the amount so paid against the estate of Herman Schaffner & Co. The following is a copy of the check as it was offered in evidence:

"No. 1076.                              CHICAGO, *June 2, 1893.*
"*To Herman Schaffner & Co., Bankers:*

"Pay to the order of First National $581$\frac{08}{100}$ five hundred eighty-one and $\frac{08}{100}$ dollars.

                                        F. L. VOLTZ & CO."
    "Certified June 2, 1893.

                        HERMAN SCHAFFNER & CO.
                                A. SWARTZ, *Teller.*"

Endorsed on back: "First National Bank.—Without recourse.—R. J. Street, *Cash.*" "Pay through Chicago clearing house only." "Paid June 3, 1893." The endorsement, "Paid June 3, 1893," is the clearing house stamp, put there on June 2, and dated a day ahead, by the First National Bank, in anticipation of payment through the clearing of the next day, as was the usage among the members of the clearing house.

The following is a copy of the guaranty given by appellee to the First National Bank:

                        "CHICAGO, *Feb. 3, 1886.*
"*L. J. Gage, Esq., Vice-president, City:*

"DEAR SIR—This bank hereby holds itself accountable for payment, on presentation, in the regular course to it, of any and all checks or drafts drawn upon the banks and bankers below named, or either of them, and properly certified by them. This obligation, however, to apply only to such drafts and checks as may be received by you in the course of your business in payment of collections or discounted items.  *  *  *  Herman Schaffner & Co.   "Truly yours,

                        WM. A. HAMMOND, *Cashier.*"

The suit is assumpsit, by appellee, as assignee of the check, against appellants, as makers. The declaration also contains the common counts. The issues joined were

submitted to the circuit court without a jury, and the finding and the judgment were for appellee for $607.66 damages, and thereafter the judgment was affirmed in the Appellate Court.

At the trial, appellants submitted certain written propositions to be held as law. The court held proposition 1, as follows :

"The court finds, as a matter of law, that the relationship between Herman Schaffner & Co. and the plaintiff herein, whereby the latter represented the former in the clearing house in the city of Chicago, was that of principal and agent."

But the court refused to hold propositions from 2 to 9, inclusive, which were as follows :

2. "The court finds, as a matter of law, that the plaintiff herein came into possession of the check sued on herein, for and as the agent of Herman Schaffner & Co., and that the payment made therefor by it to the First National Bank was, in law, a payment by Herman Schaffner & Co., and an extinguishment of the drawer's liability.

3. "The court finds, as a matter of law, that as the National Bank of Illinois was not liable upon its guaranty to the First National Bank, the payment by it was made as volunteer, and it is not entitled to be subrogated, as against the defendants, to the rights of the First National Bank.

4. "The court finds, as a matter of law, that the contract executed by the National Bank of Illinois in 1886 was *ultra vires* and void, and that the First National Bank could not have maintained any recovery thereon for the check in question.

5. "The court finds, as a matter of law, that the contract of guaranty executed by the National Bank of Illinois to the First National Bank in 1886 is void, as rendering the National Bank of Illinois liable for an amount in excess of the capital stock of the company actually paid in, and that the First National Bank could not have

maintained any action thereon for the recovery of the amount of the check in suit.

6. "The court finds, as a matter of law, that the contract of guaranty executed by the National Bank of Illinois to the First National Bank in 1886 is void, as being against public policy, and that the First National Bank could not have maintained any action thereon for the recovery of the amount of the check in suit.

7. "The court finds, as a matter of law, that the defendants are not liable to the plaintiff upon the check sued on herein.

8. "The court finds, as a matter of law, that the First National Bank was bound to know the *ultra vires* character of the contract of guaranty executed to it by the National Bank of Illinois in 1886, by reason of itself being a national bank.

9. "The court finds, as a matter of law, that Herman Schaffner & Co. would have no right of action upon the check in question if it had paid it, and that the National Bank of Illinois cannot, by virtue of the payments made by it in the course of its agency for Herman Schaffner & Co., acquire any greater rights, as against the defendants herein, than Herman Schaffner & Co. would have had, had such payment been made by them."

MOSES, PAM & KENNEDY, for appellants :

The plaintiff, while acting as the agent of Herman Schaffner & Co., received the check in question in the course of its agency, and paid it as such, and it now attempts to enforce rights under it which its principal, Herman Schaffner & Co., could not have done, for it must be conceded that if Herman Schaffner & Co. had paid the check it would have been an absolute extinguishment of the maker's liability.   Mechem on Agency, sec. 457; *Burton* v. *Slaughter*, 26 Gratt. 914.

The contract was void, being *ultra vires*,—that is, it was beyond the power of the National Bank to thus con-

tract under the United States Banking act.   U. S. Rev.
Stat. (2d ed.) 1878, p. 993, sec. 5136; also sec. 5202.

All the facts essential to make the plea of *ultra vires*
good are present in the case at bar.   2 Morse on Banks
and Banking, secs. 722-759.

A well-reasoned case on the question of *ultra vires* is
*Bradley* v. *Ballard*, 55 Ill. 413.

In *Seligman* v. *Bank*, 3 Hughes, (U. S. Cir. Ct.) 647, upon
demurrer to the declaration, the sole question presented
was whether, upon the facts stated in the declaration,
plaintiffs were entitled to recover, and the guaranty was
held bad.  The case is nearly analogous to the case at bar.

A case materially bearing upon the facts at bar, and
settling the right of the defendants to raise the question
of *ultra vires* by reason of the voluntary payment by the
appellees, is *Suppiger* v. *Garrels*, 20 Ill. App. 625.

There will be no subrogation unless the payment was
made either under compulsion or for the protection of
some interest of the party making the payment, and in
discharge of an existing liability.   Sheldon on Subroga-
tion, sec. 3.

MORAN, KRAUS & MAYER, for appellee:

An indorsement may be made by any form of words or
characters intended to so operate.    Daniel on Neg. Inst.
sec. 686; Rand on Com. Paper, sec. 794.

The case of *Penn* v. *Bornman*, 102 Ill. 523, involves a
State statute, and in the opinion there rendered the court
expressly states that upon questions arising under the
National Bank act the decisions of the Federal court are
paramount, and must control.   Whether or not a national
bank can avoid its contract simply because it has been
entered into in violation of the National Bank act, is a
question that must be determined by the Federal courts.
*Weber* v. *Bank*, 64 Fed. Rep. 208.

If appellee did not see fit to make the defense of *ultra
vires* but paid the check in accordance with its guaranty,

appellants cannot say that appellee shall not be subrogated to the position of the First National Bank because the guaranty was *ultra vires.* 2 Morse on Banks and Banking, (3d ed.) sec. 723.

Mr. JUSTICE BAKER delivered the opinion of the court:

There was no real inconsistency in the rulings of the trial court upon the written propositions submitted to it, in holding proposition 1 and refusing to hold propositions 2, 7 and 9 as law in the decision of the case. Assuming it to be true that, while appellee represented Herman Schaffner & Co. in the clearing house, the relation that existed between them was that of principal and agent, yet that relation ceased to exist early on the morning of June 3, 1893, when Herman Schaffner & Co. made a general assignment for the benefit of their creditors and ceased doing business, and appellee refused longer to represent them in the clearing house, and threw out and returned their clearings, amounting to $6976.01. The evidence is, that in the forenoon of June 3 appellee refused longer to pay checks certified by them, and that the check in question was not paid through the clearing house. The testimony of Moll, who was assistant cashier of appellee, is explicit, that the check was paid by appellee on account of the guaranty in writing held by the First National Bank. And Street, cashier of the First National Bank, testifies in chief: "This check was shown to me by our note teller, and I remembered the fact that we had a guaranty from the National Bank of Illinois, and I held them to their guaranty, simply, and they took the check up." And he testifies on cross-examination: "When that check was not paid through the clearing house, our bank, either on June 3 or June 5, demanded that the National Bank of Illinois should give us the face of it." And also says that he endorsed the check by way of transfer to the National Bank of Illinois, but to protect his own bank made the endorsement "without recourse."

In holding proposition 1, the trial court did not, either in terms or by necessary implication, find, as matter of fact, that appellee, *in paying the check*, did so as agent of Herman Schaffner & Co., and when that proposition is read in the light of the refusal to hold propositions 2, 7 and 9, it is manifest that court must have found that appellee did not pay or come into possession of the check "for and as the agent" of Herman Schaffner & Co. Therefore the doctrine that payment by the agent of the maker of a note or drawee and acceptor of a check is a payment of the note or check, and an extinguishment of the liability of the indorser of such note or drawer of such check, has no application to the case, and the authorities cited by appellants upon this branch of the controversy, —*i. e.*, Mechem on Agency, sec. 487, *Burton* v. *Slaughter*, 26 Gratt. 914, and *Johnson* v. *Glover*, 121 Ill. 283,—are not in point.

In our opinion, the conclusion here must be, that when appellee gave to the First National Bank its cashier's check for the face of the F. L. Voltz & Co. check, and took an assignment of the latter check, it did so, not as the agent of Herman Schaffner & Co., but as guarantor of said check; and it follows, since appellee did not pay the check as agent, that by the endorsement it took the legal title to the check, and has a legal right, as assignee, to recover the money therein specified from appellants, the drawers of the check, the said Herman Schaffner & Co. having failed and refused to make payment,—and this, wholly regardless of the considerations that may have induced it to make the payment and take the assignment. Appellants, the drawers, procured the certification of the check prior to its delivery to the payee, and they are primarily liable to such payee or its assignee. *Metropolitan Nat. Bank* v. *Jones*, 137 Ill. 634; *Brown* v. *Leckie*, 43 id. 497; *Bickford* v. *First Nat. Bank*, 42 id. 238; *Rounds* v. *Smith*, id. 245.

It is claimed in some of the refused propositions that were submitted to the court, and also in the argument of appellants, that the contract of guaranty given by appellee to the First National Bank was *ultra vires* and void; that it was also void as rendering appellee liable for an amount in excess of its capital stock actually paid in, and void as being against public policy; and that therefore the First National Bank could not have maintained any action thereon against appellee for the recovery of the amount of the check in suit, and consequently the payment made by appellee was made as a volunteer, and it is not entitled to be subrogated, as against appellants, to the rights of the First National Bank. Even if all these claims should be conceded, yet if we are right in the conclusions we have announced above, appellee, as assignee of the check, has a complete legal right of recovery, and it is wholly immaterial even if it has not the equitable right to be subrogated to the position of the First National Bank.

But the determination of the question whether the guaranty contract is *ultra vires* and void, or void as being otherwise contrary to the statute under which appellee was organized, or against public policy, depends upon the interpretation that is to be placed upon the National Bank act and the effect to be given its provisions. It may be that if a statute of this State was involved, then the rule that no right of action can spring out of an illegal contract, (held in *Penn* v. *Bornman*, 102 Ill. 523, and in other cases,) would apply. But in the very case just cited the paramount authority of the Supreme Court of the United States to construe all Federal statutes, including the National Bank act, is fully conceded. The doctrine of the Federal courts, as applied to this case, is: that even if the guaranty which appellee gave to the First National Bank was *ultra vires*, or given in violation of the National Bank act, yet appellee could not urge that defense after the First National Bank, in reli-

ance upon that guaranty, had taken the certified check in payment of the acceptance of F. L. Voltz & Co., and that the power to redress the wrong committed by the appellee bank was in the government only, by a proceeding to forfeit the charter of the bank. *National Bank* v. *Matthews*, 98 U. S. 621; *National Bank* v. *Whitney*, 103 id. 99; *Weber* v. *Spokane Nat. Bank*, (C. C. A.) 64 Fed. Rep. 208.

It would seem that, under the decisions of the Federal courts, appellee could not have availed itself of the defense of *ultra vires* in an action brought on the guaranty. But even if it could have done so, it did not, but paid the check in accordance with its guaranty, and the question of the validity of such guaranty was one in which appellants had no interest, and it is a matter of indifference to them whether they pay the First National Bank or appellee, and therefore they can not be heard to say that appellee shall not have the benefit of the doctrine of subrogation. (*Slack* v. *Kirk*, 67 Pa. St. 380; 2 Morse on Banks and Banking, sec. 723.) Here, the guaranty was not endorsed on the check, but was written on a separate paper, and that paper was addressed only to the First National Bank, and upon the face of the guaranty there was an express restriction that the obligation assumed should "apply only to such drafts and checks as may be received by you, in the course of your business, in payment of collections or discounted items." And the rule is, that a guaranty so given and addressed to a particular person or corporation only, is not negotiable, and is a mere personal contract. (2 Daniel on Neg. Inst. sec. 1774.) And it results from this rule, that appellants, the drawers of the check, are total strangers to this contract of guaranty, and it does not inure to their benefit or invest them with any right.

Appellee being legally liable, or, at the very least, under moral obligations for the payment of the certified check to the First National Bank, it cannot be said that it was a mere volunteer when it paid the money and took

up the check.    A person who, though not obliged to do an act, yet has an interest in doing it, is not to be regarded as necessarily and simply a volunteer.    (*Wright* v. *London and N. W. Railway Co.* L. R. 1 Q. B. Div. 252; *Holmes* v. *N. E. Railway Co.* L. R. 4 Ex. 254; 6 Ex. 123.) And where one guarantees payment of a note or check, and on default of payment by the principal debtor pays the same to the holder, the law will imply a promise to repay on the part of the persons primarily liable, and the guarantor will be subrogated to the rights of the holder to whom he makes payment, and may maintain assumpsit against such persons.    *Babcock* v. *Blanchard*, 86 Ill. 165; *Hamilton* v. *Johnston*, 82 id. 39; Sheldon on Subrogation, (2d ed.) sec. 186, p. 285.

We think there was no substantial error in the rulings of the circuit court upon the written propositions that were submitted to it.

The judgment of affirmance rendered by the Appellate Court is affirmed.                              *Judgment affirmed.*