HENRIETTA OIL & GAS CO. v. W. B. WORSHAM & CO.   (No. 1507.)

(Court of Civil Appeals of Texas. Amarillo. March 26, 1919. Rehearing Denied April 16, 1919.)

1. GUARANTY ⬅100—GUARANTOR'S RIGHTS— REIMBURSEMENT.

Where a bank guaranteed certain subscriptions for a bonus to a factory, and another guaranteed other subscriptions for the same purpose, the bank, in seeking reimbursement for the amount paid by it under its guaranty was not chargeable with an amount paid to it by one of the other subscribers, the bank being merely his agent to receive his money and pay it over.

2. ESTOPPEL ⬅95—SUBSCRIPTION CONTRACT —PAYMENT.

Where a "Boosters' Club" procured a bank to guarantee subscriptions for a bonus to a fac-

tory without informing the bank that one subscription was payable in gas, a surplus collected by the bank over the bonus to be paid to the club, its members were estopped to claim that payment in gas was not valid as to them.

3. GUARANTY ⬤⟹100—GUARANTOR'S RIGHT AS TO PRINCIPAL—REIMBURSEMENT.

Where a bank guaranteeing subscriptions for a bonus to factory was constituted a trustee to collect and pay a sum to satisfy a mortgage on the factory site, the amount so paid by the guarantor could be recovered in a suit by it against a subscriber for his subscription.

4. GUARANTY ⬤⟹100—PAYMENT OF SUBSCRIPTION TO BONUS—RIGHTS OF GUARANTOR.

Where a bank guaranteed subscriptions to a bonus which the bank paid when due, a subscriber who failed to inform the bank that his subscription was payable in gas, was estopped, in a suit by the guarantor to recover his subscription, from claiming payment so made; the subscriber being chargeable with notice that the guarantor was bound to pay over the bonus.

5. GUARANTY ⬤⟹100 — SUBSCRIPTIONS—PAYMENT BY GUARANTOR—NOTICE TO PRINCIPAL.

Where a bank guaranteed subscriptions to a bonus under an agreement whereby the subscribers were to pay their money to the bank as their subscriptions fell due, no duty rested upon the bank to notify the subscribers that it had paid over the installments of the bonus when due.

Appeal from District Court, Clay County; Wm. M. Bonner, Judge.

Action by W. B. Worsham & Co. against Henrietta Oil & Gas Company and another. Judgment for plaintiffs, and the named defendant appeals. Reformed and rendered in part, and affirmed in part.

Taylor, Allen & Taylor, of Henrietta, for appellants.

P. M. Stine, of Henrietta, for appellees.

HALL, J. This suit was brought by W. B. Worsham & Co., bankers, against the appellant, hereinafter styled Gas Company, and S. J. Slade to recover upon a subscription contract the sum of $1,750. Appellees alleged in substance that appellants had subscribed that amount as their part of a bonus payable to H. H. Howard, for the erection and operation of a glass plant in the town of Henrietta; that appellees guaranteed in writing the amount of said subscription at the request of appellants; and that the said Slade agreed to indemnify appellees against loss upon its said guaranty; that appellees took over the subscription contract signed by a number of other subscribers as collateral, to secure them against any payment they might have to make by reason of their guaranty of this and other amounts subscribed to the said Howard, in making up a total bonus of $12,000; that upon the failure of appellants to pay said subscription appellees, as guarantors, paid the same. Appellees sue for themselves and for the use and benefit of the Henrietta Boosters' Club, an organization which took charge of and was active in securing the subscriptions. Appellant Slade pleaded the statute of frauds, and the Gas Company alleged that at the time it subscribed the $1,750 it was agreed by and between the Gas Company and the said Howard that its subscription was to be paid in gas to be furnished by appellant Gas Company, to Howard, in operating the glass plant, and that it had so paid said subscription to Howard; that appellees knew that appellant was paying it in gas; that they did not notify the appellant that they had paid such subscription as guarantors, but stood by and permitted said subscription to be paid by the appellant in gas, and soon after said subscription had been so paid in full the said Howard became insolvent, and that appellees are estopped from recovering from appellant because of their silence in not informing appellant that they had made such payment. In a trial before the court without a jury judgment was rendered in favor of Slade and against the Gas Company for $896.71. Upon request of the parties the court filed the following findings of fact and conclusions of law:

1. The court finds as a fact that on or about the 19th day of December, 1915, the contract introduced in evidence was executed between the Henrietta Boosters' Club as first party and Harry H. Howard as second party; that by the terms of said contract the Boosters' Club and its associates undertook to pay to Harry H. Howard the sum of $12,000 and to furnish a building site as a bonus for the building of a glass factory in the town of Henrietta; that the said $12,000 was to be paid as provided in the contract in three equal installments of $4,000 each. The first to be paid when the plant should arrive in the railroad yards at Henrietta, the second when the plant was under roof, and the third when the plant was completed and in operation.

2. For the purpose of raising the funds for the payment of said bonus and the purchase price of said building site the Henrietta Boosters' Club, first party, procured numerous parties, who agreed to pay various sums set opposite their names in the several subscription lists introduced in evidence, said subscription lists referring to the contract above referred to between the Henrietta Boosters' Club and Harry H. Howard, and which provided that payment should be made in cash; that on the subscription list appeared the subscription of the defendant Henrietta Oil & Gas Company, in the sum of $1,750; that several of the subscriptions on such list as placed there by the subscribers were qualified in this way, at least one bearing the indorsement of the subscriber, "to be paid upon the final completion of the plant," and otherwise qualified by the subscriber "to be paid in board"; that there was nothing on the subscription list or in the contract with

reference to the subscription of the defendant Henrietta Oil & Gas Company to indicate or suggest that the same was not to be paid in cash, but it appeared by the subscription list by a dollar mark placed opposite the subscription and from the wording of the contract, to which 'reference was made, that the subscription of the defendant Henrietta Oil & Gas Company was to be paid in cash.

3. As a matter of fact it was the intention of the Henrietta Oil & Gas Company, defendant, to subscribe the sum of $1,750 and to pay the same, not in money, but in gas, and this was understood by the several officers of the Henrietta Boosters' Club, and was discussed generally by those present at the time the subscription was made by the Henrietta Oil & Gas Company, but was not stated in the subscription contract in any way.

4. Previous to this time, and during the year 1915, the Henrietta Boosters' Club had undertaken to contract with some other party to locate a glass plant in the city of Henrietta, and had endeavored to raise some similar amount to pay them as a bonus for so locating said plant; that the defendant Henrietta Oil & Gas Company had subscribed to that undertaking also, and its subscription to that contract appeared on the face of it to be qualified "to be paid in gas." And at the time that Harry H. Howard first entered into negotiations with the Henrietta Boosters' Club, to secure a bonus for locating his plant at Henrietta, this former contract was shown to him, and from which he saw that the 'subscription of the Henrietta Oil & Gas Company was to be paid in gas, and from discussion which the said Harry H. Howard had with A. C. Parks, secretary of the Henrietta Boosters' Club at said time, the court finds that said Harry H. Howard was aware of the fact that the subscription of the Henrietta Oil & Gas Company to be made was so to be made in gas, or at least the said Harry H. Howard was in possession of facts and notice sufficient to put him upon inquiry as to those facts, and therefore I conclude as a fact that the said Harry H. Howard had notice of the fact that the subscription of the defendant Henrietta Oil & Gas Company was to be made in gas.

5. I find that after the subscription was secured in some sum in an amount of $12,000 the said Harry H. Howard, being absent from Henrietta, was advised that the sum had been secured, and was notified to proceed to ship his plant to Henrietta, Tex., to be located according to the terms of the contract entered into between him and the said Henrietta Boosters' Club, and that thereupon he advised said Boosters' Club that he would require said subscriptions to be indorsed and guaranteed by one or both of the banks then doing business in Henrietta, to wit, the plaintiff bank, W. B. Worsham & Co., and the Merchants' & Planters' Bank of Henrietta; that thereupon the said Henrietta Boosters' Club and the defendant S. J. Slade and others began negotiations in substance to induce said bank to guarantee to said Harry H. Howard that the said amount of $12,000 would be paid him in cash by said banks, and that the said banks would then look to the subscribers for reimbursement.

6. I find that said Merchants' & Planters' Bank of Henrietta, after looking over the subscription list, agreed and undertook to guarantee to Harry H. Howard a certain amount of $12,000, to wit, the sum of $3,815, and did so by executing a written guaranty to said Harry H. Howard, and agreed with the Henrietta Boosters' Club, S. J. Slade, and others that they would look to certain subscribers, whose names appeared on the subscription lists, and who for the most part were customers at its bank, for the payment of the amount subscribed by these several parties, and in this way reimburse and indemnify itself for the amount so guaranteed to be paid by it to said Harry H. Howard, and by notation made on said subscription list in pencil, viz. "M. & P." (indicating Merchants' & Planters' Bank), and placed opposite the names of certain subscribers, for the most part customers of said bank. The Merchants' & Planters' Bank selected certain parties who were to pay their subscriptions into its said bank, and among this number did not select the defendant Henrietta Oil & Gas Company as one of the subscribers who were to pay into said bank, as said Henrietta Oil & Gas Company was at that time a customer and depositor of the plaintiff, W. B. Worsham & Co.

7. I find that negotiations were had between the officers of the Henrietta Boosters' Club, S. J. Slade, and others, with the cashier and manager of W. B. Worsham & Co., plaintiff, in an effort to induce said bank to also guarantee the remaining portion of said $12,000 to said Harry H. Howard, and to accept as collateral and indemnity the obligations of the remaining subscribers to the subscription contracts, but that said officers of the plaintiff declined to do so, and referred the parties to Mr. Carl M. Worsham, the president and the principal owner of said banking concern, and who was not in daily attendance at the bank, but who was engaged a large part of his time in looking after his ranching and other interests, and that thereafter Mr. L. W. Parrish, one of the officers of the Henrietta Boosters' Club, and the defendant Slade started out from the town of Henrietta to locate Mr. Worsham to negotiate with him personally concerning the matter; that they located Mr. Worsham at his garage near his home in the city of Henrietta, and there discussed the matter with him. Mr. Worsham at first declined to accept the proposition made him, and considerable discussion ensued between those three parties about the matter.

8. I find that S. J. Slade stated to Mr. Worsham that in his judgment subscribers remaining on said lists which had not been checked off by the Merchants' & Planters' Bank were in his judgment good for the amount subscribed by them, and that those amounts would be paid according to the contract, and that, if Mr. Worsham would sign the guaranty to Harry H. Howard, that would insure that plant being located in Henrietta, and would be advantageous to the community at large, and that Worsham & Co., bankers, would not lose anything on the subscription because said subscribers would pay the amounts appearing on the subscription contract into Worsham & Co. bank, and that in fact more would be paid into said Worsham & Co. bank than would be necessary to reimburse said bank for the amount to be guaranteed by it to said Harry H. Howard, and that this surplus would be paid as provided in the contract: First, $250 to the Worsham heirs, of which Carl M. Worsham was one, in consideration of a re-

lease to be executed by said heirs to cover the lot on which the plant was to be located, and on which the Worsham heirs held a mortgage, in connection with other property, executed by W. G. Eustis; and, second, that the surplus there remaining was to be paid to the Henrietta Boosters' Club, as provided in said contract.

(A) I further find that the defendant Slade stated to Carl M. Worsham at said time and place that he (Slade) was a man of considerable means, and that he personally would see that said W. B. Worsham & Co., bankers, would not lose anything in the transaction, and that if for any reason any of the subscribers remaining unchecked on said subscription list should fail to pay into the Worsham bank the amount of their subscription, and that the amounts actually paid in were insufficient to repay the said W. B. Worsham & Co. for amounts to be paid out by them on its proposed guaranty to Harry H. Howard, then he, the said S. J. Slade, would personally pay any such deficiency to said W. B. Worsham & Co., bankers.

(B) I find that L. W. Parrish also stated to Carl M. Worsham at said time and place, and had previously so stated to the Merchants' & Planters' Bank, that most all of the bar of Henrietta had agreed to furnish their services free of charge to the banks to enforce the collection of the subscriptions, which should not be paid as provided for in the contract, and that upon these assurances given to Mr. Worsham, he then and there agreed and forthwith did execute a written guaranty, which was in evidence, and which was delivered later to Harry H. Howard, and which was in the sum of $8,185, and that contemporaneous therewith the subscription lists were turned over and delivered to the plaintiff to be held by said W. B. Worsham & Co., bankers.

9. I find that in said conversation between L. W. Parrish, an officer of and acting for the Henrietta Boosters' Club, together with S. J. Slade, who was then and for a long time had been the president of the defendant Henrietta Oil & Gas Company, and who made the subscription of $1,750 for said company with Carl M. Worsham, nothing was said directly or indirectly to indicate or suggest to the said Carl M. Worsham that the said subscription of the Henrietta Oil & Gas Company of $1,750 was to be paid in gas, and nothing was said which would put said Carl M. Worsham upon inquiry that the same was to be paid other than was indicated on the face of said subscription contract, to wit, cash, and therefore that at the time he signed said written guaranty said Carl M. Worsham, acting for W. B. Worsham & Co., bankers, had no notice of any kind that said Henrietta Boosters' Club, Harry H. Howard, and the Henrietta Oil & Gas Company had agreed among themselves that said $1,750 subscription of the Henrietta Oil & Gas Company was to be paid to the proposed glass factory in gas; that is, to furnish gas to it when it begun operations to the value of $1,750.

10. I find that Harry H. Howard, upon receipt of said written guaranty by said bank, and upon receipt of information that the same had been signed by said bank, proceeded to ship the glass factory to Henrietta, and thereafter in every way complied with the obligations which the contract imposed to erect and operate said glass plant.

11. I find that upon delivery of said glass plant at the depot at Henrietta, the plaintiff, W. B. Worsham & Co., bankers, paid said Harry H. Howard about $2,500, which was paid about the 29th of February, 1916, and that they thereafter paid the second installment about the 1st of April, 1916, in the sum of $2,500, and that thereafter, on or about June 5, 1916, they paid to said Howard the remaining $3,185.

12. I find that one J. J. Roberson had subscribed $250 on the subscription contract, and that he was one of the parties that the Merchants' & Planters' Bank had selected to pay said amount into its bank; but that for some reason the said J. J. Roberson paid the said $250 into the W. B. Worsham & Co. bank, and that this amount was also paid by said W. B. Worsham & Co. to said Howard, making an aggregate amount on the third installment of $3,435.

13. I find that when the first installment came due to said Harry H. Howard that W. B. Worsham & Co. mailed out notices to the several subscribers which it looked to to pay the amounts subscribed by them into its bank, notifying them of the fact that the subscription was due, and for them to come forward and deposit same with its said bank, and that such notice was mailed by said bank to the Henrietta Oil & Gas Company, but not received by said defendant; that said W. B. Worsham & Co. nevertheless, without waiting for said subscription to be paid into its bank, proceeded to pay to Harry H. Howard the first installment due, and thereafter, when the second installment became due, mailed out notices to the several subscribers that the second installment of their subscription was due, but there is no positive evidence that the second or third notices were mailed to the defendant Henrietta Oil & Gas Company, but said bank nevertheless proceeded in the same way on the second and third installments, and paid same to said Harry H. Howard, as the same became due; that is to say, that when said Harry H. Howard demanded the payment of any installment the Henrietta Boosters' Club would hold a meeting of its officials and investigate the facts, and then would declare that said Harry H. Howard was entitled to the payment of the several installments, and would so notify the banks, and the amounts would thereupon be paid.

14. I find that the defendant Henrietta Oil & Gas Company connected its pipes with said glass plant of Howard, and proceeded to furnish gas from the time it began operations in Henrietta and throughout the time that said plant was in operation in the city of Henrietta, which was up until December, 1916, when it became insolvent, and that said company never did collect from Harry H. Howard any sum until after said glass plant had used gas in excess of the amount of $1,750, said company understanding all the time that it was paying its subscription of $1,750 to said glass plant in gas and was not indebted to said W. B. Worsham & Co., bankers; and that said Henrietta Oil & Gas Company, after furnishing said glass plant with $1,750 of gas, proceeded to furnish additional gas to the value of several hundred dollars, for which it collected in cash from said glass plant. But this fact was not known to said W. B. Worsham & Co. at the time of the

payment of the three installments paid by it to Harry H. Howard.

15. I find that said Henrietta Oil & Gas Company furnished gas to said glass factory in the month of .May, $175; June, $426.50; July, $513.60; August, $83.25; September, $411.15; October, $580.20; and that the entire amount collected for these months amounted to $2,339.-70, being $489.70 over and above the $1,750 subscribed by defendant, and which said amount was paid to the defendant company by Harry H. Howard, by a check drawn on plaintiff, W. B. Worsham & Co. bank; and when this check was paid some time the last of October or the first of November, by the plaintiff company, then W. B. Worsham & Co. definitely learned for the first time that the agreement between Henrietta Boosters' Club, and the Henrietta Oil & Gas Company, at the time that defendant made its subscription of $1,750 was that the same should be paid to the glass factory in gas.

16. I find that about the 10th day of July, 1916, and prior and subsequent thereto, one Eaton, manager and collector of the Henrietta Oil & Gas Company, had a custom of collecting certain gas tickets through the plaintiff company's bank, that is, by leaving the tickets at said bank in order that persons owing the same might pay the amount at said bank, and such amounts would thereupon be credited by said bank to the defendant gas company's account, it being a customer of said plaintiff bank at this time; and that on or about the 10th day of July, 1916, said Eaton left with said plaintiff bank three gas tickets along with others, evidently for collection, the same being tickets for the months of May, June, and July, in the amounts above stated, and being made out to the Western Flint Glass Company (the corporate name of Harry H. Howard's glass plant); that at the time of leaving said tickets at said bank said Eaton had some conversation with one William Culwell, cashier of the plaintiff bank, which was, however, very brief, and which in effect was that these tickets were not to be collected by the bank, and that the bank need not expect payment from the glass company of the same because of some understanding, which his, the defendant's, company had with said glass plant with reference to the defendant's subscription contract; and I find that said William Culwell thereupon stated to said Eaton that he knew nothing of any understanding, and that he would look into the matter to determine whether said glass plant should pay its gas bills monthly. I find that these facts were sufficient to put said Culwell, cashier of the plaintiff's company, upon inquiry as to the truth of the facts surrounding the transaction within a reasonable time, and that by the 1st of August, 1916, said bank could and should have, if the same was material to it, learned the facts of the transaction, to wit, that the subscription of the Henrietta Oil & Gas Company was in fact intended to be paid in gas, but that said bank having already paid on June 5, 1916, the last of the three installments guaranteed by it, it did not pursue said inquiry, and did nothing with reference to the matter.

17. I find that at the time it paid each of said three installments plaintiff bank did so without notifying the defendant Henrietta Oil & Gas Company that it was doing so, and that it would look to said defendant company for reimbursement, except, as above stated, that it mailed at least one notice to the defendant company along with other subscribers, to notify it along with other subscribers that its subscription was due and payable at plaintiff's bank.

18. I further find that of the amounts paid into plaintiff's bank nothing was ever credited to the Worsham heirs in payment of its release of the mortgage held by them against W. G. Eustis for the lot conveyed by Eustis to the glass factory, and that said bank never collected more than $7,228.30 from the subscribers, and that of this amount $250 was paid by said J. J. Roberson, whose subscription was guaranteed by the Merchants' & Planters' Bank.

## Conclusions of Law.

I conclude as a matter of law:

1. That plaintiff, having never credited any amount to the Worsham heirs for their having released the mortgage on said lot conveyed by Eustis to the glass plant for a site, and having applied all amounts received to the payment of its own debt, cannot now recover the $250, the value placed on their mortgage interest in said lot or site.

2. I conclude that plaintiff, being under no obligation to pay Howard none of the amount guaranteed by it, should have given itself credit for all amounts paid into its bank by all subscribers and the subscriber J. J. Roberson, and therefore should have credited the Roberson payment of $250 to its own debt against the several subscribers, and having failed to do so, this $250 must now be held to have been paid into said bank for its own use, and no recovery for said amount had under these facts for said amount against defendant.

3. I conclude that the defendant Slade is not personally liable to plaintiff because of his defense setting up the statute of frauds of this state.

4. I conclude that the defendant Henrietta Oil & Gas Company is liable to plaintiff for the remainder of the amount paid out by it and never collected from other subscribers, because of the fact that its president's (S. J. Slade) being authorized to act for it in the matter in any way he saw fit, and his authority was not being questioned in any way at any time, having subscribed the amount of $1,750 in gas, failed to state the fact that it was subscribed in gas to plaintiff at any time, and plaintiff, being unaware of this fact, took the subscription contract from said Slade in good faith, and paid the amount for which it obligated itself, although the subscription contract was a nonnegotiable instrument, and equities between the original parties could ordinarily be set off as against any subsequent holder of the instrument, yet, when the president of defendant company, Slade, knew that said subscription contract was to be negotiated to plaintiff bank, and when he for the defendant company actually assisted in getting plaintiff to take the same as collateral, stood by, and saw the same negotiated without indorsing defendant's equities thereon in any manner apprising Carl M. Worsham that the defendant company had equities (were to pay same in gas and not in money), that said defendant company is now estopped from setting up this defense, as the same was to be paid in gas and not in money.

5. I conclude that the plaintiff cannot recover any amount for the use and benefit of the Hen-

rietta Boosters' Club, because said Boosters' Club, having full notice of all the facts as to defendant company's subscription contract being intended to be paid in gas, could not itself recover from defendant, and therefore plaintiff cannot recover for its use and benefit.

[1-3] The court arrived at the amount of the judgment it seems, by subtracting from $8,185, being the total amount of subscriptions guaranteed by the appellees, the sum of $7,288.30, which, according to the findings, is the amount collected by the appellees. As stated in the eighteenth subdivision of the findings, this sum includes $250 paid by Roberson, whose subscription was guaranteed by the Merchants' & Planters' Bank. We think the court is in error in charging this amount to the appellees, since it was not collected from any of the subscribers whose subscriptions they had guaranteed. Not having been collected from a subscriber whose name appears upon their lists, they were simply the agents of Roberson to receive his money and pay it to Howard. They were performing a duty which under the contract of all the parties rested upon the Merchants' & Planters' Bank alone. According to the facts set out in the eighth subdivision of the findings, and the statement made by S. J. Slade, the president of the Gas Company, to Carl M. Worsham, at the time the subscription lists were delivered to Worsham & Co., Bankers, the latter were made trustees for the collection of the several sums shown on the lists and for the purpose of paying off the bonus to Howard to the extent of Worsham & Co's. guaranty, the surplus, if any, to be applied, first, to the claim of the Worsham heirs, amounting to $250, in satisfaction of their lien on the lot upon which the glass factory was constructed, and the remainder of any such surplus to be paid to the Henrietta Boosters' Club, as provided in the contract. Since the court found that the members of the Boosters' Club understood at the time S. J. Slade entered the subscription for the Gas Company that such subscription should be paid in gas, we think the trial judge is correct in his conclusion that nothing can be recovered in behalf of the Boosters' Club. The payment by the Gas Company in gas is in accordance with the understanding, and the members of the Boosters' Club are estopped as such payment in gas is a valid payment of the subscription as to them. The effect of the eighth finding, being that Worsham & Co. were constituted trustees to collect and pay to the Worsham heirs the $250 mentioned therein entitled them to collect the said amount in this action.

Appellant presents the case here upon two assignments, contending that, because appellees failed to inform the defendant Gas Company that they had already paid the $1,750 subscribed by the Gas Company, and "stood by and allowed the defendant to pay said Howard said subscription in gas," appellees are estopped from recovering any judgment against appellant for said amount, since it is shown that Howard and the Glass Manufacturing Company plant are insolvent. The second assignment is:

"The court erred in his fourth conclusion of law, wherein he held this defendant liable to the plaintiff because this defendant did not notify the plaintiff at the time it indorsed said subscription and took same as collateral that said subscription was to be paid in gas, because this fact could not in any manner relieve the plaintiff of the duty of notifying this defendant that it, plaintiff, had paid said contract of subscription to said Howard, when it saw that this defendant was going to again pay said subscription to said Howard, in gas," etc.

[4, 5] Both of these assignments present practically the same question, and are overruled. When Worsham & Co., by a separate written instrument, guaranteed the payment of appellant's subscription, they had no knowledge whatever of the secret understanding between appellant and Howard that appellant should furnish the glass factory with gas. Their guaranty bound them to pay the several amounts guaranteed in three installments; the first when the equipment for the factory was unloaded at Henrietta, the second when the roof was on the factory, and the third when the factory was completed and in operation. The record shows that Slade, as the president and principal owner of the appellant corporation, knew that the guaranty had been executed by Carl M. Worsham, and delivered to Howard, and in fact it had been so executed at his special request and in consideration of his promise to indemnify Worsham & Co. against loss. Appellant further knew when the factory was completed and in operation, because, as shown by the record, it furnished the gas necessary to operate the plant. It also knew when the three installments of its subscription were due and must be held to know that, if it did not pay the amount of the subscription when the several installments were due Worsham & Co. under their guaranty were bound to pay it. It cannot be said, in view of the written guaranty of Worsham & Co., that it made the payment to Howard as a volunteer. 1 Brandt, Suretyships & Guaranty (3d Ed.) p. 624, note 45; Voltz v. National Bank of Ill., 158 Ill. 532, 42 N. E. 69, 30 L. R. A. 155; 20 Cyc. 1494. In making such payment they were discharging an obligation which the failure of the gas company to pay according to the contract as it was understood by Worsham & Co. they were bound to discharge. The court found that the bank mailed one notice to appellant of the payment by it of the first installment. As we understand the law, it was not required to do this. Since the appellant had signed the subscription, knew the terms under which it was to be paid, and

that it had not paid it, Worsham & Co. owed it no duty whatever with reference to notice. Of course if Worsham & Co. had known of the secret agreement between Slade and Howard that the $1,750 should be paid in gas, a different question would be presented. There is no element of estoppel in the failure of Worsham & Co. to notify appellant Slade that the subscription had been paid according to contract.

Appellee has filed several cross-assignments, in the first of which it is insisted that the court should have rendered judgment for the whole sum of $1,750 and in addition for $250 for the Worsham heirs. As heretofore indicated, we think appellees are entitled to recover the $250 for the Worsham heirs, but nothing in behalf of the Boosters' Club, which would be the effect of recovering the full sum of $1,750 evidenced by the subscription. We sustain the cross-assignment to the effect that the court erred in failing to expressly find that the Worsham heirs released the mortgage upon the Eustis property according to the agreement, as this fact is shown by the uncontradicted evidence.

The other cross-assignments are disposed of by what has been said above. The judgment is reformed and here rendered that Worsham & Co. recover for themselves the sum of $1,146.70, with 6 per cent. interest on said amount under the rule of Faires v. Cockerell, 88 Tex. 428, 31 S. W. 190, 639, 28 L. R. A. 528, and the further sum of $250, for the benefit of the Worsham heirs, with interest at 6 per cent. from the 5th day of June, 1916, and that it take nothing in behalf of the Boosters' Club.

The judgment of the trial court as to S. J. Slade is affirmed.

Reformed and rendered in part, and affirmed in part.