Reliance Agency Corporation, Appellant, v. Andrew J. Roberts et al., Trading as Roberts Insurance Company, Appellees.

October term, 1930. Heard in this court at the Opinion filed January 19, 1931.

WHITE & QUINDRY, for appellant.

HOSEA V. FERRELL, for appellees.

MR. JUSTICE FULTON delivered the opinion of the court.

Appellant filed its bill in the city court of Marion for an accounting and for payment of balance claimed to be due from appellees on account for insurance premiums.

The bill alleges in substance that on January 1, 1927, appellees entered into a contract with the Auto Owners Agency, Incorporated, a reciprocal insurance company at Bloomington, Illinois, by which appellees were to receive a commission of 35 per cent of gross premiums, on all business written for the company and that they continued to write business for the Auto Owners until the month of September, 1928; that they had written a large number of policies and collected in a large sum of money, the exact amount being unknown; that some of the policies had been canceled and return premiums paid; that no settlement of or premiums had ever been made between appellees and the Auto Owners Underwriters of Bloomington, Illinois; that the accounts were so intricate and complicated that it would be impossible for a jury to unravel them, and an accounting was necessary to determine the exact amount due; that on April 11, 1929, appellant and Auto Owners entered into a contract, whereby appellant reinsured the policies of Auto Owners Underwriters, assumed all unearned premiums and agreed to carry all policies then in force made by Auto Owners to their expiration, and also to pay all outstanding losses; that by said contract appellant received all of the assets of Auto Owners including the accounts of Auto Owners Underwriters against appellees; that appellant had made repeated demands on appellees for an accounting and for payment of amount due, but appellees had refused to account or pay any sum whatsoever.

Appellees filed a joint and several answer, denying the material allegations of the bill, and further set up an affirmative defense based on the following alleged facts: That, on December 1, 1927, one H. P. Gardner of Bloomington, Illinois, who sometimes did business as H. P. Gardner & Company, was indebted to appellees in an amount in excess of $12,000; that on December 16, 1927, and for some time prior thereto, H. P. Gardner

had charge of the affairs of Auto Owners Underwriters, and that he conducted the business of said company under his own name and sometimes under the name of Auto Owners Agency; that on December 16, 1927, H. P. Gardner requested appellees to write automobile insurance policies in Auto Owners Underwriters, agreeing that for all such insurance so written, appellees would receive 35 per cent of said business and that any amount which might be due from appellees for premiums on any and all policies so written would be assumed and paid or caused to be paid by the said H. P. Gardner, and he would be given credit for such amounts on his indebtedness to appellees; that the amount of said commissions and the agreement by H. P. Gardner to pay such premiums was the only condition upon which appellees would enter into such contract.

The answer further states that on February 6, 1929, the net amount due from appellees, by reason of policies written in said company, was the sum of $2,966.26, and that on that date Auto Owners Underwriters drew a draft on appellees for said amount through the First National Bank of the City of Marion; that on the same date said Auto Owners Underwriters deposited said draft in the American State Bank of Bloomington, and on said date were given credit by said American State Bank for said sum of $2,966.26; that Auto Owners Underwriters received full amount for said draft so drawn on appellees and used said sum in payment of debts and obligations of said company; that said draft was not paid by appellees but on April 22, 1929, was paid by said H. P. Gardner.

Appellant insists that H. P. Gardner was heavily indebted to them on April 22, 1929; that the payment to the American State Bank to take up drafts on said date was a voluntary payment in behalf of appellant,

and there was no instruction or direction by H. P. Gardner to pay the account of appellees and that therefore appellant had a right to apply the payment wherever it chose and to collect in full the account of appellees.

Appellees contend that appellant had a full, complete and adequate remedy at law; also that H. P. Gardner on April 22, 1929, specifically directed payment of this draft, which paid the account of appellees and that the entire proceeds therefrom, amounting to $2,966.26 was paid out in behalf of appellant.

We believe the testimony tends to support the contention of the defendant. It is clear that H. P. Gardner transacted all the business for Auto Owners Agency most of the time in his own name or that of H. P. Gardner & Company. On February 6, 1929, the Auto Owners were overdrawn at the American State Bank and on that day deposited $6,768.31, which included the draft of $2,966.26.

The Auto Owners were given credit for this amount and it was used in payment of its obligations. On April 11, 1929, the Auto Owners were taken over by appellant. On April 22, 1929, the draft was returned unpaid. Adolph Wochner, cashier of the American State Bank, notified Gardner of the situation; Gardner paid the draft out of his personal account and the receipted draft was delivered to him, and the account of the Auto Owners was closed in that bank.

At no time during the period appellees were doing business with Auto Owners were they called upon to make payment of the premiums upon policies written by them until the draft of February 6, 1929.

Under this state of facts we do not believe that the transaction could be termed a voluntary payment made to a creditor, and controlled by the principles laid down in the case of *Monson v. Meyer,* 190 Ill. 105.

In *Voltz v. National Bank of Illinois,* 158 Ill. 532, where the bank paid a check which it was under moral obligations to pay, the court held that the bank was not a mere volunteer, and stated the rule as follows: "A person who, though not obliged to do an act, yet has an interest in doing it, is not to be regarded as necessarily and simply a volunteer."

The decree of the city court of Marion, dismissing the bill of complaint for want of equity, will be affirmed.

*Affirmed.*